## CROW *v.* SPECIAL SCHOOL DISTRICT NO. 2.

Opinion delivered February 19, 1912.

SCHOOLS—FORMATION OF RURAL SPECIAL SCHOOL DISTRICT.—Territory once organized and established into a rural special school district, under act of May 31, 1909, as amended by act April 7, 1911, can not be cut off and included within another rural special school district.

Appeal from Miller Chancery Court; *James D. Shaver,* Chancellor; affirmed.

STATEMENT BY THE COURT.

School District No. 2 in Miller County was duly organized on October 22, 1910, as a rural special school district under Acts 1909, c. 321, approved May 31, 1909, later amended by act approved April 7, 1911.

The electors of the district at the annual meeting in May, 1911, authorized the school board to borrow twenty-five thousand dollars, or so much of that amount as might be necessary, with which to construct and build necessary school buildings. On July 3, 1911, upon petition, the county judge made an order appointing appellants judges and directed them to hold an election at Rondo for the purpose of creating and establishing

another proposed rural special school district, which included the east half of rural special school district No. 2, and three sections of land south of Rondo. The proposed district contained two-thirds of the railroad mileage of special school district No. 2 and all of the pipe line extending through said district, the principal revenue producing property of it and only seventy-one white children of the district, leaving in the old district 286 white children and that part of same not included in the proposed district.

Appellee school district brought this suit to restrain the appellants as such judges from holding the election under said act of 1909 for the purpose of establishing said school district.

Appellants answered, denying the material allegations of the complaint, except as to the formation of the appellee district and their appointment as such judges to hold an election for the establishment of the proposed rural district, cutting off a part of the territory of said appellee district, and alleged that it was the purpose of the directors of said district to borrow money to build a school house that was not needed and to purchase a site and build a house thereon and move another school from the site it had occupied for fifty years, to the inconvenience, detriment and injury of the patrons of the district, and asked an injunction, prayed a dissolution of the injunction granted against them and for an injunction to prevent such proposed action on the part of the directors of the appellee district.

After the hearing of the testimony in the case, the court perpetually enjoined appellants from holding the election to create the proposed district and dissolved the injunction against appellees, from which decree appellants appealed.

*John N. Cook,* for appellants.

The only territory exempt from the operation of the act is that in incorporated cities and towns. The term "any given territory" used in the act means any territory designated or set out in the petition provided for by the act. Acts 1909, p. 948 § 2; 95 Ark. 26, 31; 78 Ark. 118. Had the Legislature intended to exempt any part of a rural single school district, it would have employed apt words expressing that intention, and, the Legislature not having made such exception, the

courts can make none.    59 Ark. 237-244.    It is not the business of the courts to supervise legislation so as to subserve convenience or to relieve from hardships where the language of an act is plain and unambiguous.    72 Ark. 195;  65 Ark. 565; 69 Ark. 528;  14 S. W. (Tex.) 794-795.

*Gustavus G. Pope,* for appellee;  *W. H. Arnold,* of counsel.

There is nothing in Act No. 321, approved May 31, 1909. or Act No. 169, approved April 7, 1911, amendatory thereof, warranting the conclusion that the Legislature intended that the boundaries of a rural special school district may be changed or the district abolished after it is formed.    48 Ark. 307; 139 S. W. 1112;  58 Ark. 116;  65 Ark. 529;  71 Ark. 556;  76 Ark. 309;  54 Ark. 135.

A school district is a quasi-corporation, a creature of the Legislature, capable of exercising such powers as are expressly conferred upon it by statute or such as arise by necessary implication, and it can not be abolished except by legislative enactment.    33 Ark. 497;  78 Ark. 118;  95 Ark. 28.    Had the Legislature intended that a special school district, either urban or rural, could be abolished or its boundaries changed indefinitely, it would have inserted such a provision in the acts authorizing the creation of such districts.    35 Ark. 59;  36 Ark. 330.

It is evident that use of the word "territory" in the act was not intended in its ordinary sense, but rather to a common school district desiring to be created into a special school district.    29 Ark. 356;  94 Ark. 422.    See also 91 Ark. 5;  75 N. E. 52;  *Id.* 55.

KIRBY, J., (after stating the facts).    The question for decision is whether territory already organized and established into a rural special school district, under the provisions of the act of May 31, 1909, as amended by act approved April 7, 1911, may be cut off and included within another rural special school district under its provisions.

Our school system has long comprised two methods of organization of territory into school districts for the purpose of maintaining free public schools for the promotion of education and the general welfare of the State, the one, the single or special school district, including only the territory within the limits of incorporated cities and towns in the State and the territory

annexed thereto for school purposes, and the other including all the other territory within the county organized into common school districts, the county court having the power to form new school districts of such territory and change the boundaries of existing districts and adjust the indebtedness of the districts divided and equitably apportion the surplus fund upon such division.

The Legislature provided for the organization of such districts under different methods and also different laws for the government thereof, the directors within the single or special school districts in the cities and towns and the territory annexed thereto being given greater power for the management and promotion of the school interests than those of the common school districts, whose powers are limited and dependent largely upon the will of the electors as expressed at the annual school meetings.

It soon became apparent that the cause of education flourished and better schools were established and maintained in the single school districts where the directors were given more power in the control and management of the schools, and where they had more means for their maintenance, because of the wealth of the territory, and different communities and localities, desiring to improve their school facilities, sought relief of the Legislature in the enactment of divers special acts creating single or special school districts out of territory that could not be included within such districts under the general law and giving the directors thereof increased powers. To meet this insistent demand and avoid so much troublesome special legislation, the general law was made, authorizing the organization and establishment of rural special school districts. Acts 1909, c. 321, approved May 31, amended by Acts 1911, c. 169, approved April 7, 1911; § § 7591a—7591i, Castle's Supplement to Kirby's Digest.

Section 1 of said act provides: "That when the people of any given territory in any county in this State, other than incorporated cities and towns, desire to avail themselves of the benefits of all the laws of this State for the regulation of public schools in incorporated cities and towns, they may be organized into and established as a single school district in the manner

and with powers therein provided with such modifications of such laws as are herein provided."

It is contended by appellants that since the law provides that any given territory in any county "other than incorporated cities and towns" may be organized into and established as a single school district and the method therefor, any territory not included in such cities and towns may be organized into a proposed rural special school district, without regard to whether such territory may, at the time of its proposed organization, be included within a rural special school district, already organized under the provisions of the law or a special school district made by special act of the Legislature.

We do not agree with this contention. If there were no other law but said section, there would appear to be some ground for it, the exception being made as indicated, but we have the two systems of organization of school districts, with the different laws relating to the management thereof, all of which was in the mind of the Legislature at the time of this enactment.

Nowhere is the county court or the county judge, or any other agency of the State expressly given power by the Legislature to change the boundaries of single or special school districts, except in the annexation of territory adjoining cities and towns for school purposes, and no power is given for the division or dismemberment of any such special school districts unless by the acts under consideration. They provide for the organization of territory outside cities and towns and the government thereof after it is established in rural special school districts. The directors are given certain enlarged power; they may borrow money as provided under the law for the government of single special school districts, and may provide for a building fund, if authorized by the electors at the annual election, and the amount thereof; and if a majority vote is cast for a building fund, "it shall be equivalent to voting a building tax of the amount or rate as determined    *    *    * for each succeeding year, until the money borrowed by the board of directors pursuant to such vote, together with the interest thereon, shall have been fully paid."

When the building fund has been voted, they may borrow money and mortgage the property of the district as security

therefor, giving a certain certificate, the form of which is prescribed, the latter part of which reads, "which amount with interest at the rate of........per cent. per annum from this date until paid, is to be paid from the funds arising from a tax o˚........mills, to be levied annually upon the property in said district."

The certificate must be executed in triplicate, and one copy retained by the board, another delivered to the lender, and the third shall be filed by the board of directors with the clerk of the county court, and "upon the filing of said certificate it shall be the duty of the county clerk to levy each succeeding year a building tax of the amount or rate called for against the property in said district until the amount thus borrowed, with the interest thereon, has been fully paid."

The county treasurer is required to pay the holder of the certificate upon demand any funds to the credit of the building fund of said district, applying the same first to payment of the interest due. It is true, this method of borrowing is not exclusive, but it indicates the legislative intent. The necessity existed for the borrowing of money by the school districts of the State for the improvement and maintenance of its schools, and the Legislature recognized it, and gave the authority to mortgage property of the district and in effect pledge certain revenues thereof for the payment of the loan. If the construction of the statute contended for by appellants is correct, a special school district could borrow a large sum of money and thereafter be so cut up and dismembered by the formation of new rural special school districts, including part of its territory, that there would be little, if any, of the property mortgaged remaining within the old district and little of its revenue-producing property, thus defeating the probability of the success of procuring a loan at all by such district when created and one of the purposes of the Legislature in authorizing the creation thereof.

It is apparent that it had no such intention, and the whole act, construed together, bearing in mind our system of the organization of territory into school districts for the maintenance of schools and the law for the control and management thereof, shows conclusively that it was not intended that any part of the territory, once organized into a rural special school district,

could thereafter be taken and organized into another district of like kind, under the provisions of said act. *Common School District No. 13* v. *Oak Grove Special School District, post* p. 411; *Scott* v. *McCollough,* 75 N. E. 52; *Fulks* v. *Wright,* 75 N. E. 55.

The decree is affirmed.