BONNER *v.* SNIPES.

Opinion delivered March 25, 1912.

1. SCHOOL DISTRICTS—RURAL SPECIAL SCHOOL DISTRICT.—Under the authority of Acts 1909, c. 321, any given territory in any county, outside of incorporated cities and towns and the territory annexed thereto for

school·purposes, may be organized into a rural special school district, except territory already included within a special school district. (Page 303.)

2.  SAME—PETITION—RESIDENCE OF PETITIONERS.—Where a petition is presented to the county court to establish a rural special school district, out of territory composed of several common school districts, under Acts 1909, c. 321, it is immaterial where the petitioners reside, provided they reside within the territory affected.   (Page 303.)

3.  SAME—WHEN RURAL SPECIAL SCHOOL DISTRICT CREATED.—A rural special school district is created under Acts 1909, c. 321, whenever a majority of the qualified electors within the territory named in the petition vote for its establishment.   (Page 304.)

4.  SAME—HOW RURAL SPECIAL DISTRICT CREATED.—No official canvass of the votes upon the question of establishing a rural special school district is provided by Acts 1909, c. 321, nor is it necessary that the county court shall make or enter of record any orders as to such special election or relative to the establishment of such district.   (Page 304.)

5.  SAME—ESTABLISHMENT.—Where a majority of the voters within certain territory voted to form a rural special school district, under Acts 1909, c. 321, it was not within the province of the county court to limit the purpose for which the district was formed by stating that certain schools for colored children should remain as heretofore, nor can it affect the validity of the organization or establishment of the district that the petition praying for its formation stated that such schools should be maintained as before.   (Page 304.)

6.  SAME—CREATION OF NEW DISTRICT—DIVERSION OF FUNDS.—Where several common school districts are combined into one rural special school district, the school taxes previously levied and collected by such common school districts and turned over to the new district are not wrongfully diverted within art. 14, sec. 2, of the Constitution, since all the money so collected will be expended for the benefit of the inhabitants of such district.   (Page 305.)

7.  SAME—NUMBER OF DISTRICT.—Under Kirby's Digest, § 7541, providing for the numbering of rural school districts, a school district may be numbered by the letters of the alphabet, instead of by figures. (Page 305.)

8.  STATUTES—EXTENSION BY REFERENCE TO TITLE.—Constitution 1874. art. 5, sec. 22, providing that "no law shall be revived, amended or the provisions thereof extended or conferred by reference to its title only, but so much as is revived, amended, extended or conferred shall be re-enacted and published at length," is not contravened by Acts 1909, c. 321, authorizing the people outside of cities and towns to form special school districts, and providing that the laws already in force as to special school districts shall apply to districts created under that act.   (Page 305.)

Appeal from Lee Circuit Court; *Hance N. Hutton,* Judge; affirmed.

*Chas. E. Daggett* and *Coleman & Lewis*, for appellants.

1. No legal voter or resident of District No. 30 signed the petition. Kirby's Digest, § 7548; 60 Ark. 124. The vote must be had in *each* district separately.

2. Proper notice was not given. Kirby's Dig., § 7540, 7695.

3. Any report before the adjourned term of the court was unauthorized. The day was not designated within five days after the presentation of the petition. Kirby's Dig., § 7669.

4. The law requires equal facilities for colored and white folks. 45 Ark. 121.

5. Moneys collected for one district can not be transferred to, nor paid out for, another. Art. 14, § 2.

6. No authority was vested in the county court to require the election returns to be made to said court. Mansf. Dig., § 6261; Kirby's Dig., 7677.

7. There is no provision authorizing the election of directors to serve two for two years, and two for three years. Kirby's Dig., § 7671.

8. There is no provision for designating one particular place to hold the election in cities and towns. Act. Feb. 4, 1869, § 2, Mansf. Dig., § 6621; Gantt's Dig., § 5518.

9. There is no authority for ordering a school for white children only. Const. 1874, art. 14, § 1; 45 Ark. 121.

10. There is no authority for conferring on directors of districts organized the power to pay debts by districts embraced in the territory organized. Art. 14, § 3, Const; Kirby's Dig., § § 7548 to 7551.

11. The act is void for uncertainty. Kirby's Dig., § § 7668 to 7695. It attempts to revive or amend by reference to title only. 29 Ark. 552; art. 5, § 22, Const. Provisions of law applicable to single school districts can not be extended by a general reference to the prior law. 49 Ark. 135; 52 *Id.* 290; 6 So. 119; 23 *Id.* 843; 42 L. R. A. 468; 2 *Id.* 270.

*H. F. Roleson,* for appellee.

1. The act contemplates that the petition for organization be presented to the county judge. The county court has no jurisdiction nor authority in the matter. The orders made by the county judge are effective to create the district, but placing his orders on the record does not make of them orders of the county court nor confer upon it jurisdiction,

and no appeal would lie to the circuit court. Appellants have resorted to the wrong method to quash the orders.

2. Appellants' first objection is a legislative question rather than judicial. There is no constitutional barrier nor other good reason why the Legislature may not create a district out of any territory it sees proper or provide any means or method it chooses for creating one. It unquestionably has such power. 97 Ark. 71. And in exercising such power it is not required to provide for reimbursement of a district whose funds should be taken and absorbed. 131 Mich. 639, 92 N. W. 291.

3. Appellants are in error in contending that the notice ought to have been given pursuant to section 7540, Kirby's Digest. Section 7670 is the statute which controls the method of notice. The record not disclosing what kind of notice was given, it will be presumed that such notice as is required by law was given.

4. The legal inference is that the petition was presented to the county judge on the day the order was made, on May 30, 1910, the date for the election being set for June 11. On June 17, having discovered errors in the election of June 11, he ordered another election to be held on June 27. While the statute does not expressly authorize the county judge to set aside an election illegally held, or to make additional order in case no election is held, yet the fair construction of the act would give him such power.

5. The clause in the petition with reference to the manner in which the school for white and colored children should be conducted is mere surplusage, and does not vitiate the petition. Any abuses occurring after the formation of the district could readily be corrected.

6. If appellants' fifth contention were sound, all the statutes providing for consolidation of districts and creation of new districts, etc., would be unconstitutional, since, whenever a special school district is organized, it must necessarily take funds that were collected previous to its organization.

7. The objection that the directors were not elected for the proper term will disappear at the next annual school election, since, if any directors were elected for a longer term

than that provided by law, their terms will nevertheless expire at the time limited by the law.

8. The statute does not require that an election be held in each district, but that the county judge shall fix the time and place for holding such election, and there is no reason why the statute should not control.

9. The act is constitutional.   49 Ark. 131; 121 Fed. 276, 283.

KIRBY, J.   This appeal challenges the organization of a rural special school district, Aubrey No. C, in Lee County, composed of territory embraced in common school districts 6, 30, 33 and 4 3 under act 321 of the Acts of 1909, approved May 31.

The petition required by the act was duly filed on May 30, 1910, was granted, and three electors were appointed to hold the election on Saturday, June 11, 1910, at a designated place  and report their proceedings to the July term of the court.

On June 13, the returns of the special election held on June 11, for the formation of the special district under the order of May 30, were cancelled, and the election declared illegal, and three certain other electors appointed to hold an election for the organization of the proposed district, and the order of May 30 was revoked.   The election was directed to be held on June 27, 1910, and on July 5, thereafter, the court entered an order, reciting the proceedings, that an election had been directed to be held on Monday, June 27, 1910, submitting to the voters of the proposed territory the question of establishing same into a rural special school district, and that certain six persons were elected as directors, and that an order confirming the report and adjudging that the proposed territory embraced in said four common school districts was established and organized into a special school district, to be known and designated as Special  School  District Aubrey No. C. The order further provided that all of the property or funds belonging to Districts Nos. 6, 30, 33 and 43, be vested in said single school district, as successor to said common school districts, and that the single school district should pay and discharge all liabilities lawfully incurred by said common school districts respectively.

It is contended that no electors residing in Common School District No. 30 signed the petition for the formation of the rural special school district, and that the act does not

contemplate that more than one common school district may be established into a special district.

Under the authority of the act, any given territory in any county, outside incorporated cities and towns and the territory annexed thereto for school purposes, may be organized and established into a rural special school district by compliance with its provisions, except territory already included within a special school district, whether established under the terms of the act or by special act of the Legislature. *Crow* v. *Special School District,* 102 Ark. 401.

It is not necessary that the petitioners shall reside in any particular part of the territory proposed to be organized into a special school district, but only that they reside within the given territory; and while it would have appeared more considerate of the interests of each common school district proposed to be established into the special district had some of its residents petitioned therefor, the fact that they did not do so could not invalidate an election properly held by direction of the county judge for the establishment of such district. It was the duty of the. county judge to order the election, to appoint the judges to hold it, and fix the time and place therefor, within five days after the presentation of the petition for the special school district, and in this instance he ordered the second election within five days after declaring the first illegal and revoking the order under which it was held.

It is contended next that the organization of the district was invalid because the order for the election upon the question of its establishment was not made within five days from the presentation of the petition therefor, and that the election was not held within fifteen days from the date it was ordered. The law does provide it shall be the duty of the judge within five days after the presentation of the petition to designate a time and place for holding the election and appoint the judge thereof, which time shall not be less than seven nor more than fifteen days distant from the making of the order, and the statute appears to be mandatory as to the time that can be fixed for the election, and if it is more than directory as to the duty of the judge to act within five days after the petition is presented, this petition being on file and the court having, on the 13th of June, declared the election. held on the 11th

void, and revoked its order of May 30, and ordered another election for June 27, it can well be considered that the petition, being acted upon on said June 13, was presented within five days of that time, having in fact been before the county judge from the date of its filing, May 30, and no notice of its filing in the first place being required by law. The election upon the date fixed, the 27th of June, was not less than seven nor more than fifteen days distant from the date of the fixing of the time therefor, on June 13, and was in accordance with the requirement of the statute.

Each elector within the territory named had the right to vote upon the question in the election; and if a majority voted in favor of the establishment of the special school district, it effected that purpose and established the territory into such rural special school district. The district is established under the law if a majority of the qualified electors within the territory named in the petition before the county judge shall vote for the establishment of such district. *Common School District No. 13* v. *Oak Grove Special School District*, 102 Ark. 411; section 2, act May 31, 1909; sections 7669-7670, Kirby s Digest.

No official canvass of the votes and declaration of the result thereof by the county court is provided for by the act, nor does it require that the county court shall make and enter of record any orders as to such special election or relative to the establishment of the special school district. *Common School District No. 13* v. *Oak Grove Special District, supra.*

This being true, it was not within the province of the county court, in its judge's order providing for the election to establish the district, to limit the purpose for which it was established, nor could the judge make, in the order declaring it established, any exception or reservation requiring the continuance of certain negro schools located in different portions of the special school district, as they had been theretofore maintained within the separate common school districts. Neither can it affect the validity of the organization or establishment of the special school district that the petition praying for its formation also contained a statement that certain of the schools for colored children within the territory would remain and should be maintained as they were before its

organization. For, as said in *Maddox* v. *Neal*, 45 Ark. 124: "No duty is imposed upon or discretion given to the directors about schools for one race that is not applicable to the other. It is the clear intention of the Constitution and statutes alike to place the means of education within the reach of every youth. Education at the public expense has thus become a legal right extended by the laws to all the people alike," and equal facilities will and must continue to be furnished for the education of the white and colored children of the district, as before the organization of the special district, regardless of said statements of the petition and order of the county court. Nor will it be a diversion of the funds of any of the common school districts, within article 14, section 2 of the Constitution, organized into such rural special school district, since all the moneys collected for school purposes under the laws of the State belonging theretofore to each of such common school districts was collected for the benefit of the inhabitants thereof from the property situated therein, all of which are now located within the confines of the new district, as established under authority of this act. *School District of Hartford* v. *West Hartford Special School District*, 102 Ark. 261.

It may have been, and probably was, intended that the rural special school districts created under the act and the amendment should be numbered, for convenience, in figures, but the establishment of this as "Aubrey No. C" would not be in conflict with the statute prescribing as number blank. Doubtless, the districts could be designated with the letters of the alphabet, instead of figures, without any violation of the statute, and result in as much convenience in the keeping of the records thereof as though they had been otherwise numbered.

The court has already held that the act does not revive or amend any prior law, or extend or confer the provisions of any law in existence to the inhabitants of rural districts in any county in this State, but, on the contrary, that it confers a new right upon the people in such territory of organizing themselves into single school districts in the same manner that such districts are organized in cities and incorporated towns, conferring upon them, when so organized, the same powers that are given such special school districts under

existing laws, and that the act providing for the establishment thereof is not in conflict with the Constitution. *Common School District No. 13* v. *Oak Grove Special School District, supra.*

Upon the whole case, we do not find any prejudicial error, and the judgment of the circuit court affirming the action of the county judge in the proceedings for the establishment of the rural special school district is affirmed.