## LeMaire *v.* Henderson.

### Opinion delivered October 3, 1927.

1.  SCHOOLS AND SCHOOL DISTRICTS—CONSOLIDATED COUNTY SCHOOL DISTRICTS.—Acts 1927, p. 531, providing for the establishment of consolidated county school districts in counties having a population exceeding 75,000 persons, *held* not contrary to Const., art. 14, providing that the Legislature shall provide for the maintenance and support of common schools, as the Legislature has authority to make a legitimate classification of schools.

2.  SCHOOLS AND SCHOOL DISTRICTS—ESTABLISHMENT OF SCHOOL DISTRICTS.—Const., art. 14, requiring the Legislature to provide for the establishment, maintenance and support of a system of common schools, gives the Legislature a free hand in the establishment of school districts and in division of territory of the State among them.

3.  SCHOOLS AND SCHOOL DISTRICTS—ESTABLISHMENT OF CONSOLIDATED
    SCHOOL DISTRICTS.—Acts 1927, p. 531, authorizing the establish-
    ment of consolidated county school districts in counties voting to
    accept the benefits of the act, which have a population of 75,000
    or over, according to the last Federal census preceding the elec-
    tion, and excepting from the operation of the act school districts
    in cities having a population of 10,000 persons, is not invalid
    as making an improper classification of school districts.

4.  SCHOOLS AND SCHOOL DISTRICTS—METHOD OF CLASSIFICATION.—In
    classifying school districts, the Legislature may consider the
    density of the population, wealth of the country, system of roads,
    and topography of the country, with reference to whether it is
    hilly or not.

5.  SCHOOLS AND SCHOOL DISTRICTS—METHOD OF ELECTING SCHOOL
    TRUSTEES.—Acts 1927, p. 531, providing for the establishment of
    consolidated county school districts in counties voting to accept
    the benefits of the act, is not invalid under Const., art. 14,
    because it provides a general method for the election of school
    trustees and for the division of territory into school districts.

6.  SCHOOLS AND SCHOOL DISTRICTS—LOCAL AND SPECIAL ACT.—Acts
    1927, p. 531, providing for the establishment of consolidated
    county school districts in counties having a population of 75,000
    or over, according to the last Federal census preceding the elec-
    tion "herein provided for," is not invalid as in violation of the
    constitutional amendment forbidding the passage of special or
    local laws, though its application is confined to one county only,
    since it may hereafter apply to counties having the requisite
    population.

7.  CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE POWER.—Acts
    1927, p. 531, providing for the establishment of consolidated
    county school districts in counties having a population of 75,000
    or more which vote to accept the benefits of the act, is not
    invalid as delegating legislative power to the people, as the
    statute is complete in itself, but makes its enforcement depend
    upon an election called for that purpose.

Appeal from Pulaski Chancery Court; *Frank H.
Dodge,* Chancellor; affirmed.

STATEMENT OF FACTS.

C. J. LeMaire brought this suit in equity against
D. T. Henderson and other members of the county board
of education to keep them from proceeding with the
consolidation of the school districts of this county under
the provisions of an act of the Legislature of 1927, com-
monly known as the county unit school system. The chan-

cery court sustained a demurrer to the complaint, and, the plaintiff declining to amend his complaint or to plead further, it was decreed that his complaint be dismissed for want of equity. The case is here on appeal.

*Ed B. Dillon, J. H. Bowen* and *S. S. Jefferies,* for appellant.

*Emerson, Donham & Fulk,* for appellee.

HART, C. J., (after stating the facts). This appeal questions the constitutionality of an act of the Legislature of 1927, providing, by a vote of the people, a county unit school system in counties having a population exceeding 75,000. Acts of 1927, page 531. Section 1 provides that the act shall apply only to counties which, according to the last Federal census preceding the election herein provided for, have a population of 75,000 or over.

Section 2 provides that, upon the petition of not less than one hundred qualified electors of any county in this State, the county board of education shall, within thirty days, call an election to be held in said county, at which election the qualified electors shall vote on the question of whether said county, outside of the school districts pertaining to cities with a population exceeding ten thousand inhabitants as shown by the last Federal census, shall be made into one school district. Section 3 provides for the manner of giving notice of said election. Section 4 provides how the election shall be conducted. Section 5 provides that, in case the county, outside of the districts organized in the cities named, is made into one school district, such district shall become owner of all the property of the former school districts composing it. Special school districts in cities of a population of more than 10,000 inhabitants are not affected by the act. Section 6 provides that the consolidated district shall be a special or single school district with all the powers of a single special school district of the first class. Section 7 looks to protecting the obligations of the contracts of the consolidated districts. Section 8 provides for a bond issue to borrow money for purchasing sites for school buildings and erecting, equipping and repairing the same. Sec-

tion 9 provides that, for the purpose of administration, the county board of education shall divide the county school district into local divisions and that the duties of the local trustees shall be outlined by the county board of education.

It is first earnestly insisted that the act is in violation of article 14 of our Constitution, relating to the subject of education. That article makes it the duty of the Legislature to provide for the establishment, maintenance and support of a system of common schools in this State. This court has recognized from the beginning that the Legislature must employ agencies to accomplish that object, and that a school district is a proper agency therefor. To effectuate the purposes of the Constitution, this court has recognized generally that the Legislature has what is commonly called a free hand in the establishment and division of the State into school districts. The power given to the Legislature to classify school districts in any reasonable manner is no longer an open question in this State, and a legitimate classification has been upheld generally, unless it has clearly gone beyond reasonable limits in defining the classification. Such classification has been upheld when applied to both cities and rural territory being organized into single or special school districts and into common school districts. The Legislature recognizes the difference in population, wealth, and the topography of the country in the organization of school districts. *School District of Hartford* v. *Hartford Special School District,* 102 Ark. 261, 143 S. W. 895; *Crow* v. *Sp. Sch. Dist. No. 2,* 102 Ark. 401, 144 S. W. 226; *Bonner* v. *Snipes,* 103 Ark. 298, 147 S. W. 56; *Sp. Sch. Dist. No. 2* v. *Sp. Sch. Dist. of Texarkana,* 111 Ark. 379, 163 S. W. 1164; and *Krause* v. *Thompson,* 138 Ark. 571, 211 S. W. 925.

There is no constitutional objection to the classification of school districts any more than there is to the classification of cities. Classification may become as necessary for school districts as for cities. The needs of school districts may differ as substantially as those of

cities. The density of population, the wealth of the country, the system of roads and the topography of the country with reference to whether it is hilly or not, may be taken into consideration. This is the legitimate office of classification, and, so long as the Legislature makes a reasonable classification which is uniform in its operation, its power is supreme in the matter. The uniformity of a system of public schools is not interfered with by providing a general method of the election of trustees and the division of the territory into school districts. *State v. Long* (Mont.), 52 Pac. 645; and *Minsinger v. Rau,* 236 Pa. St. 327, 84 Atl. 902, Ann. Cas. 1913E, p. 1324. In a note to the case last cited it is said that with the right to create also inheres the right to classify school districts and to enact different provisions for the different classes, providing the classification is based on distinctions that afford a reasonable ground for the classification, and various decisions of several State courts are cited in support of the text. In the same case-note the substance of the decision in *State v. Long,* Ann. Cas. 1913E, p. 1332, is stated as follows.

"A law classifying school districts according to population for the purpose of the election of trustees is not violative of a constitutional provision which requires that provision shall be made for the establishment and maintenance of a uniform system of public schools, and that the legislative assembly shall establish and maintain a general, uniform and thorough system of public free common schools. It is sufficient if the law passed makes a reasonable classification, and is reasonable and uniform in its operation and effect on all districts within the classification made, although, at the time of the enactment of the statute, the classification may extend to a few districts only."

Another objection to the statute is that the act, by its terms, is merely confined to Pulaski County, and for that reason is in violation of an amendment to our Constitution forbidding the passage of special or local laws. In making this contention reliance is placed upon the

decision of this court in *Ark-Ash Lumber Co.* v. *Pride & Fairley,* 162 Ark. 235, 258 S. W. 335. In that case the court held that the act was purely local because it could only apply to Mississippi County. It will be noted, however, that the act was not prospective in its operation, and that no county other than Mississippi County could ever fall within its operation. Hence we said that, while the law was general in form, the court could not permit the constitutional prohibition to be overruled by enacting a local law under the guise of a general statute. In the case at bar we think that the case falls within the principles of law announced in *McLaughlin* v. *Ford,* 168 Ark. 1108, 273 S. W. 707. In that case it was held that, to make a law applicable to municipal corporations general, it is not necessary that it should operate upon all cities and towns in the State, but that it is sufficient of it applies to such cities and towns coming within the designated class. We recognize that the form of the statute does not control in determining whether it is general or special. We also held that the Legislature may classify counties, cities and towns according to population, where such classification rests upon substantial differences in situation and needs. Here the act is prospective in its operation. It is not confined to counties having a population of 75,000 or over at the time of the passage of the act. Counties which might have a population of 75,000 or more at any time in the future automatically fall within the terms of the law. Construing the words, "which, according to the last Federal census preceding the election herein provided for," according to the general rules of construction, when taken in consideration with the whole context of the act, we think mean the census next preceding the election which is to be held under the provisions of the act. Hence, as above stated, when any county acquires a population of 75,000 or more in a Federal census, it comes within the terms of the act, and may operate under its provisions and hold an election for the purpose of organizing its school districts into one district.

Another objection to the constitutionality of the act is that its provisions amount to a delegation of legislative power to the people. It is a rule well established that, while the Legislature may not delegate to the people the right or power to make laws, it may enact a law and consult the people as to the propriety of putting it into effect. The statute does not delegate legislative power so long as it is complete in itself when it has passed the Legislature, even though it is left to a vote of the people when it shall come into operation. In the case at bar the law is complete in itself and declares the result which may come from holding the election under its provisions. It is simply a case where the Legislature passed a complete statute but made its enforcement depend upon the will of the people, to be expressed at an election called under the provisions of the act for that purpose. *Little Rock* v. *North Little Rock,* 72 Ark. 195, 79 S. W. 785; *Harrington* v. *White,* 131 Ark. 291, 199 S. W. 92; *Lee Wilson & Co.* v. *Compton Bond & Mortgage Co.,* 103 Ark. 452, 146 S. W. 110; *State* v. *Martin & Lipe,* 134 Ark. 420, 204 S. W. 622; *Van Hook* v. *Wallace,* 143 Ark. 203, 220 S. W. 37; *Thompson* v. *Trice,* 145 Ark. 144, 223 S. W. 367; *Capps* v. *Judsonia & Steprock Road Improvement Dist.,* 154 Ark. 46, 242 S. W. 72; *Summers* v. *Road Imp. Dist. No. 16,* 160 Ark. 371, 254 S. W. 696; and *Miller* v. *Witcher,* 160 Ark. 479, 254 S. W. 1063.

The result of our views is that the Legislature was within its power in passing the law in question, and it becomes our duty so to declare. It follows that the judgment of the chancery court was correct, and will be affirmed.