The Honorable John E. Miller State Representative P.O. Box 420 Melbourne, Arkansas 72556-0420
Dear Representative Miller:
This is in response to your request, on behalf of the Superintendent of the Calico Rock Public Schools, for an opinion on the proper distribution of school tax monies collected on behalf of the former Tri-County School District between July 1, 1993 and December 31, 1993.
Specifically, you have attached correspondence to your request which indicates that the former Tri-County School District was annexed by five adjoining school districts — Calico Rock, Marshall, Mountain View, Stone County and Norfork. The Tri-County district, which encompassed parts of Baxter, Searcy, and Stone counties, no longer exists, as its territory was completely annexed by these five districts. In the annexation agreement, the five districts agreed to equally divide Tri-County's cash balance on hand at the time of annexation. Additional tax revenues, however, which were levied on behalf of the Tri-County District, were not collected until after the effective date of the annexation, and the corresponding dissolution of the Tri-County District. These taxes were collected between July 1, 1993 and December 31, 1994. The issue presented by your request is how these monies should be distributed to the five annexing districts. The counties involved have suggested that the five districts agree on the percentages each district should receive. This would simplify accounting procedures for the counties. The districts, however, are concerned about the legality of such a plan, and feel that, according to Act 966 of 1991 and the Pre-Annexation Agreement, the only legal way to disperse the funds is to allocate them to the districts in which they were collected. This would involve a process of determining which tax dollars arose from particular parcels of property, and allocating tax dollars to the school district which annexed that property.
It is my opinion that this question is not clearly answered by Arkansas law. It is my opinion, however, although Act 966 of 1991 gives the county board of education the discretion to determine the proper distribution of property of the annexed district, Arkansas Constitution, art. 14, 3 may require, at least under these particular factual circumstances, that the local tax monies arising from a particular annexed territory be allocated to the district which annexed that territory.
The relevant portion of Act 966 is codified at A.C.A. 6-13-1206 (Repl. 1993), and provides as follows:
 (a) Any resulting district created under this section shall succeed to the property of the district dissolved, shall become liable for the contracts and debts of such district, and may sue and be sued therefor.
 (b) Where territory less than the entire district is annexed or consolidated to a district, the receiving district shall take the property of the district from which the territory was taken, as the county board of education shall deem proper, and shall be liable for that part of all indebtedness of the district from which the territory was taken as shall be assigned to them by the county board of education unless otherwise approved by majority vote of the affected school district boards of directors. [Emphasis added.]
The pertinent subsection for our purposes is subsection (b) above, which governs the situation where territory less than the entire district is taken by another district. In the facts presented, five different districts have taken territory which is less than the entire district. In such cases the act provides for the county board of education to determine the proper amount of "property"[1] of the annexed district to be taken by the annexing district.[2] This subsection does not seem to contemplate that there may be more than one annexing district and territory spanning more than one county. In the facts presented there are three different county boards of education.[3] Thus, in my opinion it is difficult, as a practical matter, to apply the provisions of this statute to the facts at hand.
The Superintendent suggests that Act 966, presumably this provision, requires that the tax monies arising from the territory annexed be distributed to the annexing district. Although the language of this provision is not entirely clear, it is my opinion that it does not require the county board to apportion the property of the territory annexed to the district which annexed that territory. The statute merely gives the county board of education the authority to apportion "the property of the district from which the territory was taken." (Emphasis added.) In my opinion, the phrase "from which the territory was taken" modifies the word district, and serves only to identify that it is the property of that district which is at issue. Thus, in my opinion, Act 966 does not support the Superintendent's suggestion.
In any event, however, a question may arise as to whether a division of the property by the controlling county board of education which does not allocate tax monies which arose from a particular territory to the school district which annexed that territory, complies with Arkansas Constitution, art. 14,3, which prohibits local school taxes from being "appropriated . . . to any other district than that for which it is levied." It is my opinion that this constitutional provision in all likelihood does support the superintendent's suggestion concerning distribution of these tax monies.
There is no Arkansas case law which directly addresses the precise facts at issue. Two Arkansas cases, however, shed some light on the question. The first is School District of Hartford v. West Hartford Special School District, 102 Ark. 261,143 S.W. 895 (1912). In this case the District of Hartford was enlarged to annex some of the territory of the West Hartford Special School District. The special act which effected the annexation directed the county court to determine that portion of the revenues in the county treasury which arose from the annexed territory. That is, the county court was to determine the exact amount of funds which arose from the territory annexed and transfer those funds to the annexing district. The West Hartford District argued that the tax monies at issue were levied on its behalf, and to transfer them to the Hartford District would violate art. 14, 3. The court disagreed, stating that:
 The legislative power [over school districts] is full and complete, and is conferred by the provision of the Constitution. . . . As a part of that power, it may make provision for the division of the property, and the apportionment of the funds of the old corporation when a portion of its territory is transferred to the jurisdiction of another school district.
In Hartford, however, the court made much of the fact that the funds transferred arose from the territory annexed. The court stated : "In other words, in the case before us, there was a mere alteration of the lines of the district, and the fund transferred was raised by a tax on the people owning and residing upon the lands which were also transferred. In such case we do not think it can be said that the tax is appropriated to any other district than that for which it was levied." 102 Ark. at 265. Thus, the court upheld the transfer of funds from the annexed district to the annexing district, where the funds correlated to the territory annexed.
The second case is Bonner v. Snipes, 103 Ark. 298, 147 S.W. 56
(1912). In Bonner, four common school districts combined into one rural special school district. It was argued that the tax monies collected on behalf of the former four districts could not be transferred to the new district. The court disagreed, relying on Hartford, as follows:
 Nor will it be a diversion of the funds of any of the common school districts, within article 14, section 2 of the Constitution, organized into such rural special school district, since all the moneys collected for school purposes under the laws of the State belonging theretofore to each of such common school districts was collected for the benefit of the inhabitants thereof from the property situated therein, all of which are now located within the confines of the new district, as established under authority of this act. [Citing Hartford. Emphasis added.]
103 Ark. at 305.
This language seems to recognize a constitutional requirement under art. 14, 3 that annual school tax dollars follow the territory which gave rise to them, in the case of an annexation of that territory.
The issue is not entirely clear, but in my opinion a significant constitutional issue would be raised by the mere agreement of the school districts to distribute the monies based upon percentages, if the distribution would result in monies from one district's annexed territory being transferred to a district from which the monies did not arise.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely, WINSTON BRYANT Attorney General
WB:cyh
[1] The statute refers to the "property" of the district. It is unclear to what extent this broad term was also intended to encompass cash of the annexed district. Cf. Op. Att'y Gen.94-007.
[2] In my opinion the last phrase of this subsection ("unless otherwise approved by majority vote of the affected school district boards of directors") does not apply to the portion of the subsection which governs the apportionment of property, but is limited to the portion governing the assumption of indebtedness. This construction is consistent with the rule of statutory construction that a limiting clause is to be restrained to the last antecedent, unless the subject matter requires a different construction. Bell v. Board of Directors Jefferson County Bridge District, 109 Ark. 433, 160 S.W. 190
(1913). The punctuation of the subsection also supports this conclusion.
[3] Although this particular subsection does not refer to a "controlling county board of education," the act does define this term as "the county board of education of the county in which the district is administered." A.C.A. 6-13-1201(4). It is conceivable that this subsection could thus be construed to grant the discretion to the "controlling county board of education," where more than one county is involved.