Carlos ELAM *v.*
HARTFORD FIRE INSURANCE COMPANY

00-900                                           42 S.W.3d 443

Supreme Court of Arkansas
Opinion delivered April 26, 2001
[Petition for rehearing denied May 24, 2001.]

*William A. Hill, P.A.*, by: *William A. Hill*, for appellant.

*Kilpatrick, Aud & Williams*, by: *Gene Williams*, for appellee.

J IM HANNAH, Justice. Appellants Carlos and Arbra Elam appeal the Franklin County Circuit Court's grant of summary judgment to Elam's employer's commercial automobile insurance carrier, Appellee Hartford Fire Insurance Company (Hartford), denying underinsured motorist insurance (UIM) coverage to Elam for injuries he sustained during his employment with Fred Dorwart d/b/a Mountain Ridge Farms. We reverse and remand.

*Facts*

On November 3, 1995, Carlos Elam, a now sixty-three-year-old farm manager for Mountain Ridge Farms, was injured when he was struck by a trailer pulled by a truck as it was pulling away from Elam. According to Elam's various accounts of the incident, he was washing one of his employer's farm trucks when John Milam of Milam Heating and Air Conditioning Company drove up in his work truck and stopped to talk to Elam about installing some equipment on the farm. Milam remained in his truck while speaking with Elam, who was standing between Milam's truck and the farm truck. The trucks were close enough for Elam to touch both trucks at the same time. The men discussed the work to be done, and then, according to Elam, he turned back to the farm truck to continue washing it and Milam pulled away quickly. In doing so, Elam was hit by Milam's attached trailer that Elam did not see being pulled behind Milam's truck. However, as Hartford notes in its brief, Elam testified in his May 1999 deposition that he was actually reaching for the truck's door pull to get in when he was hit by Milam's trailer. Elam also argues in his brief that he was reaching for the door pull to get in the truck when he was hit.

Elam sustained injuries from the accident, and was treated by numerous doctors through his workers' compensation claim. While the doctors found that had sustained a work-related injury, he received differing disability ratings, one as high as 40 percent to the body as a whole, and one as low as 10 percent to the body as a whole. One of the treating physicians found him totally disabled from working, while another determined that with retraining, he could go back to some type of lighter work. Notably, all of the treating doctors found that, although not problematic before the injury, Elam suffered from spinal stenosis, or narrowing of the spine, and perhaps degenerative disc disease brought on by aging, which contributed to his post-injury back problems. He made a workers' compensation claim and received medical and indemnity benefits before settling his workers' compensation claim against Mountain Ridge Farms and its workers' compensation insurance carrier on January 29, 1997, for $30,000 plus an additional $5,987.60 for related expenses. The workers' compensation carrier, ITT Hartford Insurance Company (a different insurance division from Hartford, the appellee), also agreed to waive its subrogation rights. On December 10, 1997, Elam settled a third-party claim against Milam and his insurance carrier for $50,000, which represented the total available insurance from Milam, after providing the

required notice to Hartford. Elam and his wife also settled a third-party claim under their own UIM policy with Southern Farm Bureau Casualty Insurance Company for $10,000 on April 23, 1998. Finally, Elam was found to be disabled by the Social Security Administration due to his injuries as he has been unable to work since the injury.

On November 2, 1998, Elam filed a complaint against his employer's farm vehicle insurance carrier, Hartford, requesting payment under the UIM policy, taking into account the $50,000 and $10,000 already paid by the other automobile policies. He also alleged that workers' compensation and social security benefits could not be offset because they were collateral resources. Hartford had $1,000,000 in available coverage under the policy. Hartford answered on November 24, 1998, and denied coverage under the UIM policy, claiming that the policy specifically excludes coverage to employees who also recover workers' compensation benefits.

On August 26, 1999, Hartford filed its first motion for summary judgment, arguing several points. First, Hartford asserted that Elam's claim was barred under the exclusive-remedy doctrine of Arkansas's Workers' Compensation Act. Hartford next argued that the workers' compensation statutes do not allow claims by employees against their employer's UIM policies. Hartford further argued that Elam's claims were not covered under the UIM policy. Finally, Hartford argued that there was no evidence of fault by Milam as required to recover under the UIM policy.

Elam responded by filing his first amended complaint on September 24, 1999, adding an additional claim of bad faith against Hartford. Elam also filed a motion to compel discovery on that date, arguing that Hartford had refused to provide copies of Elam's claim file and other requested documentation, claiming privilege in declining to produce those documents. Finally, also on September 24, 1999, Elam filed a motion for summary judgment and a response to Hartford's motion for summary judgment. In his motion, Elam countered Hartford's allegations in its motion. Elam argued that the Arkansas Workers' Compensation Act does not bar a claim for UIM coverage under an employer's policy where workers' compensation benefits have already been paid. Elam notes that the claim against the UIM carrier is not a claim against an "employer" as barred by the act. Elam also asserts that he fell within the policy requirements to be covered as an "occupier" of the farm truck because he was "using" the vehicle at the time of his injury.

Elam also argued that evidence of Milam's negligence was overwhelming.

Hartford filed its answer to Elam's first amended complaint on September 30, 1999, again denying coverage under the policy. On October 11, 1999, Hartford filed a motion for summary judgment on Elam's first amended complaint, incorporating its previous motion for summary judgment and adding the additional arguments for summary judgment on the bad-faith claim. Hartford contended that Elam could not prevail on the bad-faith claim without any facts in support, and that Elam's motion for discovery to "discover" facts to support the bad-faith claim was not a proper use of discovery where there were no other facts other than denial of coverage to support the bad-faith claim. Hartford also filed a response to Elam's motion for discovery.

On October 13, 1999, Hartford responded to Elam's motion for summary judgment and on November 1, 1999, Elam responded to Hartford's motion for summary judgment on Elam's first amended complaint. On that same date, Elam filed his second amended complaint, apparently clarifying two terms of the first amended complaint regarding any good-faith denial of Elam's claim. Hartford again denied the allegations in the second amended complaint on November 4, 1999, and filed a motion for summary judgment on the second amended complaint that same day.

On February 4, 2000, the trial court heard oral arguments from the attorneys on the motions for summary judgment and the motion to compel discovery. On April 13, 2000, the trial court issued its order denying Elam's motion for summary judgment and granting Hartford's motion for summary judgment. The trial court did not include any discussion about the basis for its decision, and it did not rule on Elam's motion to compel discovery. Elam filed his notice of appeal on May 10, 2000.

*Standard of Review*

■■ The parties filed opposing motions for summary judgment, agreeing that there are no genuine issues of material fact remaining. As we have oft stated, summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Mashburn v. Meeker Sharkey Fin. Group, Inc.*, 339 Ark. 411, 5 S.W.3d 469 (1999). Once the

moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. The moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ark. R. Civ. P. 56; *Estate of R. Donley v. Pace Indus.*, 336 Ark. 101, 984 S.W.2d 421 (1999). It is well settled that a trial court has wide discretion in matters pertaining to discovery, and thus we will reverse a trial court's ruling only when there has been an abuse of discretion. *Wilson v. Neal*, 332 Ark. 148, 964 S.W.2d 199 (1998); *Parker v. Southern Farm Bureau Cas. Ins. Co.*, 326 Ark. 1073, 935 S.W.2d 556 (1996); *Stein v. Lukas*, 308 Ark. 74, 823 S.W.2d 832 (1992).

Elam argues five points on appeal. Elam first argues that the exclusive-remedy provision of the Arkansas Workers' Compensation Act, found at Ark. Code Ann. § 11-9-105(a) (Repl. 1996), does not bar his claim because he is not asserting a liability claim against his employer or workers' compensation insurance carrier as precluded under that statute, and case law from other jurisdictions that have faced this issue support allowing the UIM claim. Second, Elam argues that the Arkansas Workers' Compensation Act at Ark. Code Ann. § 11-9-410(B) (Repl. 1996), does not impliedly preclude UIM claims by an employee against his employer's UIM carrier. Next, Elam argues that his claims are covered under the UIM commercial automobile policy as specifically noted in the language of the policy and impliedly through the function of the policy. Elam also argues that there was ample evidence of the third-party tortfeasor's negligence as required to be shown under the UIM policy. Finally, Elam argues that Hartford's summary-judgment motion should not have been granted before the court ruled on Elam's motion to compel discovery because the motion to compel discovery raised issues of material fact that made summary judgment improper.

In response, Hartford counters Elam's claims point for point. Hartford argues that summary judgment was proper because, as a matter of law either under the Arkansas Workers' Compensation Act or under the terms of the policy, Elam could not recover UIM benefits. Furthermore, Hartford contends that the trial court did not err in failing to rule on the motion to compel discovery because Elam only added the claim for bad faith and sought the discovery in

dispute after Hartford filed its original motion for summary judgment. Furthermore, Elam failed to plead facts in his first and second amended complaints sufficient to support a claim of bad faith or to trigger the requirements allowing discovery.

*I. The Exclusive Remedy Provision of the*
*Arkansas Workers' Compensation Act and the*
*Third-Party Liability Provision of the Arkansas*
*Workers' Compensation Act*

The first issue on appeal is whether Elam's workers' compensation claim was his exclusive remedy, barring any additional claims for insurance coverage involving his employer. The exclusive-remedy provision of the Act is found at Ark. Code Ann. § 11-9-105, which states in part:

> (a) The rights and remedies granted to an employee subject to the provisions of this chapter, on account of injury or death, shall be exclusive of all other rights and remedies of the employee, his legal representative, dependents, next of kin, or anyone otherwise entitled to recover damages from the employer, or any principal, officer, director, stockholder, or partner acting in his capacity as an employer, or prime contractor of the employer, on account of the injury or death, and the negligent acts of a coemployee shall not be imputed to the employer. No role, capacity, or persona of any employer, principal, officer, director, or stockholder other than that existing in the role of employer of the employee shall be relevant for consideration for purposes of this chapter, and the remedies and rights provided by this chapter shall in fact be exclusive regardless of the multiple roles, capacities, or personas the employer may be deemed to have.

This provision clearly indicates that any claim for injury or death against an employer may only be brought under the Act, thus eliminating an employer's tort liability. According to the Act, an employee's remedy against his employer for injuries sustained on the job is to file a workers' compensation claim, and this remedy is exclusive as to the employer, as stated in the statute, and has only been extended by this court to the employer's workers' compensation insurance carrier. *Cherry v. Tanda*, 327 Ark. 600, 940 S.W.2d 457 (1997). The exclusivity provision of the Act mirrors the general purpose of the Act, which was to change the common law by shifting the burden of all work-related injuries from employers and employees and placing it on the consuming public, thus eliminating

any need to prove fault. *Brown v. Finney*, 326 Ark. 691, 932 S.W.2d 769 (1996). This exclusive remedy favors both employers and employees. *Id.*

Hartford argues that it is immune from suit because a workers' compensation claim is Elam's exclusive remedy for this work-related injury. While it is clear that Hartford was not the workers' compensation carrier, thus making that extension of the exclusive-remedy statute inapplicable here, the question turns on whether a suit against the employer's UIM carrier qualifies as a suit against the employer and, thus, is precluded under the statute. Elam notes that while the workers' compensation statute has an exclusive-remedy provision against an employer and workers' compensation carrier, it was not intended to be the exclusive source of compensation as evidenced by other provisions in the Act. Elam argues that here, Hartford actually stands in the shoes of the third-party tortfeasor against whom Elam may make a claim under the Act. He argues that he is not claiming that his employer was liable but instead, as required in a UIM case, he is claiming that a third party was liable.

Elam cites *Philadelphia Indemnity Ins. Co. v. Morris*, 990 S.W.2d 621 (Ky. 1999), in which the Kentucky Supreme Court held that an injured employee may make a claim for UIM benefits under a policy secured by his employer where the employee is an included insured, despite the exclusive-remedy provision of the Kentucky workers' compensation statute. That statute is quite similar to Arkansas's exclusive-remedy statute.

In *Morris*, the Kentucky Supreme Court found that a worker's UIM claim was not precluded where the worker's damages exceeded both the workers' compensation benefits he received and the policy-limit amounts he was paid by the third party's liability insurance. The Kentucky court found that the suit was a direct action against the UIM carrier as opposed to an action against the employer, and declined to extend the exclusive-remedy protection to anyone other than the employer or its workers' compensation carrier. The Kentucky court further found that payment made in performance of a contractual obligation is not payment of "damages," as it was voluntarily purchased by the employer to cover situations such as the one in this case. Other jurisdictions also recognize that UIM and UM (uninsured motorist) coverage purchased by an employer and claimed by an employee in a work-related accident is valid despite the language of exlusive-remedy statutes. *See Levasseur v. Lowery*, 533 S.E.2d 511 (N.C. 2000); *Lieber v. ITT Hartford Insurance Center, Inc.*, 15 P.3d 1030 (Utah 2000). In

*Lieber*, for example, the Utah Supreme Court found that an employee could make a claim for uninsured motorist (UM) benefits provided in a policy purchased by his employer despite the exclusive-remedy provision of Utah's workers' compensation statute. The Utah court reasoned that the exclusive-remedy doctrine applies only to an employee who has no viable claim that can be reduced to a judgment in a court of law or, in other words, against a third party who is not the employer or workers' compensation carrier. The Utah court found that because a UM claim could only be made where a viable claim existed against a third party, a UM claim was not a claim against the employer as excluded under the workers' compensation act. Any distinction between UM and UIM coverage on this issue is irrelevant.

■ Arkansas's appellate courts have not directly addressed this issue. The court of appeals has determined, however, that an employee may make a claim against his own UIM/UM carrier without bar by the exclusive-remedy provision of the Act. *See Southern Farm Bureau Cas. Ins. Co. v. Pettie*, 54 Ark. App. 79 (1996). This court has also held that it is against public policy to preclude recovery or allow a setoff of UIM/UM benefits to workers who have also received workers' compensation benefits. *See Travelers Ins. Co. v. National Farmers Union Prop. & Cas. Co.*, 252 Ark. 624, 480 S.W.2d 585 (1972) (court held that a provision of UM coverage was invalid where it provided that any amount payable under that coverage because of bodily injury would be reduced by the amount paid, and the present value of all amounts payable, on account of such injury under any workers' compensation law); *Shepherd v. State Auto Prop. & Cas. Ins. Co.*, 312 Ark. 502, 850 S.W.2d 324 (1993) (court held that a provision of UIM policy calling for setoff for workers' compensation benefits was against public policy); *see also, O'Bar v. MFA Mutual Ins. Co.*, 275 Ark. 247, 628 S.W.2d 561 (1982) (court held that a clause in a policy denying accidental death benefits where an insured's beneficiaries also received workers' compensation payment for the insured's death is a violation of public policy).

The reasoning for such holdings is evident in *Travelers Ins.*, where this court stated:

> The uninsured motorist legislation was passed long after adoption of the Workmen's Compensation Act. When we consider the basic purposes of the latter act, our belief that the legislature did not intend that the Uninsured Motorist Act be the means of discrimination against working people protected under the workmen's compensation laws is strengthened. . . . The right claimed by

the [company issuing the policy providing for uninsured motorist coverage] would simply provide it with a windfall in the case of one covered by the workmen's compensation laws. The purpose of the Uninsured Motorist Act was to protect the insured, not the insurer.

*Travelers Ins.*, 252 Ark. at 631–32. The court again in *Shepherd* noted the purpose behind UIM benefits, stating:

Underinsured motorist coverage was enacted in this state in 1987 to supplement benefits recovered from a tortfeasor's liability carrier. Ark. Code Ann. § 23-89-209 (1987). We have stated its purpose to be "to provide compensation to the extent of the injury, subject to the policy limit." *Clampit v. State*, 309 Ark. 107, 110, 828 S.W.2d 593, 595 (1992).

*Shepherd*, 312 Ark. at 513–14.

This court, however, has denied recovery in a UM claim where the employee received workers' compensation benefits from a self-insured employer. In *Gullet v. Brown*, 307 Ark. 385, 820 S.W.2d 487 (1991), this court held that workers' compensation benefits were the exclusive remedy of an employee injured in the course of his employment by an uninsured motorist where the UM coverage was provided by the employer's self-insurance program. In *Gullet*, the deciding factor for this court was that the employer, Pulaski County, maintained a self-insured UM policy administered by Gallagher–Bassett Services, Inc., and that although such a claim sounded more in contract than in tort, our workers' compensation exclusive-remedy statute makes no exception for contractual claims.

However, *Gullett* is distinguishable from the present case by virtue of the fact Elam's employer was not self-insured. Here, Elam's UIM claim was not one against a self-insured employer and, thus, a claim against his "employer" as precluded under the workers' compensation exclusive-remedy doctrine. Instead, it was a claim against a third-party insurance carrier.

The General Assembly recognizes this distinction as indicated in its structure of the third-party liability provision of the Act, found at Ark. Code Ann. § 11-9-410. This statutory provision allows an injured employee to make a claim against a third party who is not the employer or workers' compensation carrier for injuries sustained on the job. The Arkansas Supreme Court has defined a third party under Ark. Code Ann. § 11-9-410 as "some

person or entity other than the first and second parties involved, and the first and second parties can only mean the injured employee and the employer or one liable under the compensation act." *Zenith Ins. Co. v. VNE, Inc.*, 61 Ark. App. 165, 965 S.W.2d 805 (1998); *Wilson v. Rebsamen Ins.*, 330 Ark. 687, 957 S.W.2d 678 (1997); *Neal v. Oliver*, 246 Ark. 377, 438 S.W.2d 313 (1969). Thus, under Ark. Code Ann. § 11-9-410, neither a workers' compensation carrier nor an employer can be a third party. Hartford argues that the only mention of UIM coverage in Ark. Code Ann. § 11-9-410 appears in the "subrogation" section of the statute, and that it only applies to the employer's or workers' compensation carrier's ability to make a claim against the employer's UM or UIM carrier. This section of Ark. Code Ann. § 11-9-410 states:

> (4) An employer or carrier who is liable for compensation under this chapter on account of injury or death of an employee shall be entitled to maintain a third party action against the employer's uninsured motorist coverage or underinsured motorist coverage.

> (5) The purpose and intent of this subsection is to prevent double payment to the employee.

Despite Hartford's argument that this section impliedly precludes Elam's claim because it only mentions an employer's or workers' compensation carrier's ability to make a claim for UM or UIM benefits, the entire third-party liability statute indicates otherwise. First, in looking at Ark. Code Ann. § 11-9-410, it should be noted that the statute is split into three sections: (a) Liability Unaffected; (b) Subrogation; and (c) Settlement of Claims. The first section deals with the employee's ability and right to make a third-party claim and his employer's or carrier's right to subrogation. While this section does not specifically mention an employee's ability to make a UM or UIM claim against his employer's or any other UM or UIM policy, it also does not specifically preclude it. The second section, "Subrogation," deals with the employer's or workers' compensation carrier's right to pursue a subrogation claim against any third parties whether the claimant pursues a separate claim. Most notable in this section is the language that an employer or carrier who is liable for workers' compensation benefits paid to an injured employee may maintain a "third party action" against the employer's UM or UIM coverage. This language alone indicates that the legislature recognized that an employer's UM or UIM carrier is a "third party" in these types of claims. As such, it is only reasonable that the employer's UM or UIM carrier is also a "third

party" in an injured employee's UM or UIM claim against that same carrier.

Hartford argues that the "strict construction" requirements of the act require that the legislature's failure to mention UM or UIM recovery by the claimant impliedly precludes such claims. However, this court recognizes its duty to strictly construe workers' compensation statutes pursuant to Ark. Code Ann. § 11-9-704(c)(3) (Repl. 1996). *See Hapney v. Rheem Mfg. Co.*, 341 Ark. 548, 26 S.W.3d 771 (2000); *Lawhon Farm Servs.*, 335 Ark. 272, 984 S.W.2d 1. Strict construction means narrow construction and requires that nothing be taken as intended that is not clearly expressed. *Id.* (citing *Thomas v. State*, 315 Ark. 79, 864 S.W.2d 835 (1993)). The doctrine of strict construction requires this court to use the plain meaning of the language employed. *Holaday v. Fraker*, 323 Ark. 522, 915 S.W.2d 280 (1996). Arkansas Code Annotated § 11-9-101 (Repl. 1996) states that the purpose of the workers' compensation law is to provide benefits "to all legitimately injured workers who suffer an injury or disease arising out of and in the course of their employment. . . ." Taken at face value, Hartford's argument would require this court to find that there has been no specific exclusion against a claim by an employee against his employer's UM or UIM carrier, and further this court would have to find that the legislature recognized in the "subrogation" section of Ark. Code Ann. § 11-9-410 that a claim against an employer's UM or UIM carrier was a "third party" claim. This not only defeats Hartford's argument under this section of the Act, but also under the exclusive-remedy provision of the Act.

Furthermore, the underlying purpose for UM/UIM benefits remains the same whether purchased by the employer for the benefit of its employees or by the employee for his own personal benefit — UIM coverage was enacted to supplement benefits recovered from a tortfeasor's liability carrier, and to find that an employee could not benefit from the policy under which he is a recognized insured would result in "discrimination" against a workers' compensation claimant and a windfall to the UIM or UM carrier who received benefits on a policy under which it would not have to pay. Also, the viability of a workers' compensation case may be harder to prove, as here, where the claimant had some pre-existing injuries for which workers' compensation would not pay, but which could be covered by the third party, and thus the UIM or UM insurance, if shown to be aggravated by the accident due to the third party's negligence.

■ This is a direct action against Hartford, the UIM carrier, a third–party insurance carrier and not an action against the employer. We hold that this claim for UIM benefits from the employer's UM/ UIM insurance carrier is not barred by the exclusive–remedy provision of the Arkansas Workers' Compensation Act, and we decline to extend the exclusive–remedy protection in this situation. We also hold that the third–party liability provision of the Act, found at Ark. Code Ann. § 11-9-410, does not preclude a claim by Elam against Hartford.

## II. The Terms of the UIM Policy

Because the Arkansas Workers' Compensation Act is not a bar to Elam's claim for UIM coverage under his employer's UIM policy with Hartford, the court must next consider whether Elam qualified as an insured under the policy and whether he is entitled to UIM benefits pursuant to the provision of the policy. First at issue is whether Elam was an insured covered under the policy. If so, the second issue is whether there was sufficient evidence of Milam's "negligence" to trigger coverage of an insured under the policy.

### A. Elam's Status as an Insured

First at issue is whether Elam is considered an insured under the terms of the UIM provision of the Hartford insurance policy. While Hartford argues that it is excused from payment under the liability section of the policy in cases in which the insured must pay workers' compensation benefits, Hartford ignores the fact that this is not a claim for liability insurance against the employer, but is a direct claim against Hartford as the insurer for a UIM claim by one of its insured. As such, the only applicable section for a determination of coverage is the specific section entitled "Arkansas Uninsured and Underinsured Motorists Coverage." This section of the policy specifically notes that "this endorsement modifies insurance provided under the following: business auto coverage form...." This is of particular note because the Arkansas UIM and UM coverage section changes the definition regarding who qualifies as an insured from that mentioned previously in the general business auto coverage form for liability insurance for the employer.

■ Section B of the UM/UIM policy states:

B. Who is an insured?

1. You

2. If you are an individual, any "family member".

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

Elam may qualify as an "insured" who is defined as "anyone else" occupying a "covered auto" under section B(3)." Under this provision, Elam must show that he was "occupying" the vehicle. "Occupying" is defined on the third page of the UM/UIM policy as meaning "in, upon, getting in, on, out or off." In this case, an issue argued by Hartford was whether Elam's act of washing the vehicle qualifies as "in, upon, getting in, on, out or off." Certainly, Elam's varying testimony as noted above indicates that he was at least washing the vehicle, and perhaps even attempting to get into the vehicle to move it when he was injured. At the very least, Elam's activities when he was hit centered on washing the truck as he was directed to do by his employer. While Elam argues that case law would support a finding that working around the vehicle was sufficient to qualify under this definition of "occupying," the fact that he gave somewhat differing accounts of the accident could create an issue of fact for a jury, thus rendering summary judgment improper in this case. Certainly, Elam impliedly argues that by law he is entitled to recovery because his actions have qualified, at least in other jurisdictions, as "occupying" the vehicle. Hartford responds that the plain language of the "occupying" definition would exclude coverage to Elam. Because this matter leaves a question of fact open for interpretation, this matter was not proper for summary judgment.

## B. Evidence of Milam's Negligence

Next, in order to recover under the UIM policy, Elam has to show that he was "legally entitled to recover from the owner or operator of" an underinsured vehicle. Ark. Code Ann. § 23-89-209(a)(3) (Repl. 1999). In *Hettel v. Rye*, 251 Ark. 868, 475 S.W.2d 536 (1972), this court held that the policy requirement that an insured must be legally entitled to recover from an uninsured

motorist is intended only to require a showing of fault on the part of the uninsured motorist. This is particularly true in such a case where the tortfeasor's insurance company settled the case without any court finding of liability.

Again, summary judgment was improper because the UIM carrier certainly has the right to litigate the tortfeasor's negligence in order to attempt to reduce or eliminate its liability. Hartford argues that Elam alleged no facts to show that Milam was negligent. However, Elam did allege that Milam pulled his truck and trailer up very close to Elam and that he pulled away in a rushed manner. These allegations alone present a genuine issue of fact for the jury to determine whether Milam was negligent and whether Elam was contributorily negligent in this case.

### C. Implication that the Policy is Available even in Workers' Compensation Cases

Finally, it should be noted that the UIM/UM policy in section D "Limit of Insurance" notes that Hartford specifically claims the right of reduction of payments for "all sums paid or payable under a workers' compensation, disability benefits or similar law...." Whether this clause is valid under Arkansas law is not at issue here, but clearly, Hartford anticipated that a workers' compensation claimant or employee of the named insured employer may make a claim under the UIM/UM provision of the policy.

### III. The Motion to Compel Discovery

On this final issue, Elam argues that the trial court erred in failing to grant its discovery request to compel Hartford to produce certain documents, including Elam's claim file, before granting summary judgment. Because this court has found that summary judgment was not proper, the trial court's failure to address Elam's motion to compel discovery is moot at this time.

Reversed and remanded.