BRANDON J. HARRISON, Judge
Michael Myers was killed at work when a load of molten metal spilled and covered his body. His employer, Arkansas Steel Associates, LLC, did not dispute that Myers's death on 19 February 2014 was work related and is paying death benefits to Michael's widow, Mary Myers. In May 2016, Mary Myers, individually and as an administratrix of her husband's estate and a representative of his wrongful-death beneficiaries, filed a lawsuit in the White County Circuit Court. The circuit court, in part, transferred jurisdiction to the Arkansas Workers' Compensation Commission. In June 2018, the Commission found that some entities-Yamato Kogyo Company, Ltd.; Sumitomo Corporation; Sumitomo Corporation of Americas d/b/a Sumitomo Corporation of America; SC Steel Investment, Inc.; SC Steel Investment, LLC; Yamato Kogyo (U.S.A.) Corporation; and Yamato Kogyo America, Inc.-were entitled to the exclusive-remedy provisions of the Arkansas Workers' Compensation Act. Myers appeals that decision.
This appeal raises at least two important questions in the law of workers' compensation:
• May an employee of a subsidiary entity sue one or more parent corporations in tort, or are parent corporations immune "employers" under the exclusive-remedy provision of the Workers' Compensation Act? See Ark. Code Ann. § 11-9-105(a) (Supp. 2017).
• If one or more parent corporations are deemed "employers" within the meaning of the act, does that violate article 5, section 32 of the Arkansas Constitution ? Ark. Const. art. V, § 32, amended by Ark. Const. amend. XXVI.
I.
The parties stipulated to the following facts when litigating this case before the administrative law judge:
1. On February 29, 2014, Michael Earl Myers was employed by Arkansas Steel Associates, LLC as a ladle man in a steel plant.
2. While Michael Myers was working in the course and scope of his employment for Arkansas Steel Associates, LLC, a load of molten metal spilled from a Hot Metal Crane inside the Melt Shop of the steel plant.
3. The molten metal engulfed his entire body causing, among other things, catastrophic injuries and death.
4. Liberty Mutual Insurance, Arkansas Steel Associates, LLC's insurance carrier, is paying death benefits to Claimant Mary Myers, the widow of Michael Earl Myers, arising from his work-related death.
*299 5. Arkansas Steel Associates, a New York general partnership, no longer exists and is hereby dismissed from this action.
6. SC Steel Investment, Inc. no longer exists and is hereby dismissed from this action.
7. Sumitomo Corporation of Americas was a principal and stockholder of Arkansas Steel Associates, LLC at the time of Michael Earl Myers' afore-described workplace injury and death.
8. At the time of Michael Earl Myers' afore-described workplace injury and death, Sumitomo Corporation wholly owned Summit Global Management of America, Inc., which wholly owned Sumitomo Corporation of Americas.
9. After Michael Earl Myers' afore-described workplace injury and death, Summit Global Management of America, Inc. merged into Sumitomo Corporation of Americas.
10. SC Steel Investment, LLC was a principal and stockholder of Arkansas Steel Associates, LLC at the time of Michael Earl Myers' afore-described workplace injury and death.
11. Sumitomo Corporation wholly owned SC Steel Investment, LLC at the time of Michael Earl Myers' afore-described workplace injury and death. 12. Yamato Kogyo (U.S.A.) Corporation was a principal and stockholder of Arkansas Steel Associates, LLC at the time of Michael Earl Myers' afore-described workplace injury and death.
13. Yamato Kogyo America, Inc. wholly owned Yamato Kogyo (U.S.A.) Corporation at the time of Michael Earl Myers' afore-described workplace injury and death.
14. Yamato Kogyo Company, Ltd. wholly owned Yamato Kogyo America, Inc. at the time of Michael Earl Myers' afore-described workplace injury and death.
The ownership structure of Arkansas Steel Associates, LLC, is shown in the following diagram.
*300 The appellee corporations are, either directly or indirectly, owners of Arkansas Steel Associates, LLC. They are separate and distinct entities from Arkansas Steel Associates, LLC. The appellee entities have their own corporate entity designations; their own formation and creation dates; their own headquarters; their own employer identification numbers; and their own officers, directors, and managers. The parent companies do not hire or fire Arkansas Steel employees; do not pay them salaries or wages; do not provide them with W2s or 1099s; do not train or educate them; do not supply workers'-compensation or other benefits; and do not set their work schedules. There were no direct employees of the appellee parent corporations present at the jobsite when the accident occurred; and there has been no evidence that any direct employee of the parent corporations had ever met Michael Myers before the accident.
Myers argues that an employer-employee relationship was a requirement for, and prerequisite to, employer immunity under section 11-9-105(a). Section 11-9-105 states:
(a) The rights and remedies granted to an employee subject to the provisions of this chapter, on account of injury or death, shall be exclusive of all other rights and remedies of the employee, his legal representative, dependents, next of kin, or anyone otherwise entitled to recover damages from the employer, or any principal, officer, director, stockholder, or partner acting in his or her capacity as an employer, or prime contractor of the employer, on account of the injury or death , and the negligent acts of a coemployee shall not be imputed to the employer. No role, capacity, or persona of any employer, principal, officer, *301 director, or stockholder other than that existing in the role of employer of the employee shall be relevant for consideration for purposes of this chapter, and the remedies and rights provided by this chapter shall in fact be exclusive regardless of the multiple roles, capacities, or personas the employer may be deemed to have.
Ark. Code Ann. § 11-9-105(a) (Supp. 2017) (emphasis added). According to Myers, Arkansas Steel Associates, LLC was the sole employer under the circumstances, meaning she cannot sue it in tort but can sue other entities. The parent companies were not actual employers, Myers says, because no agents of the parent companies were present at the jobsite where Michael Myers was killed nor did they treat him as an employee.
In contrast, the parent companies argue that they are employers for purposes of the exclusive-remedy doctrine because the General Assembly has made them so. Specifically, the parent companies argue that the statutory language that "any principal, officer, director, stockholder, or partner acting in his or her capacity as employer" applies to them. According to the parent companies, an immune entity does not have to act as an "actual" or "true" employer as a matter of fact-all it must do to be immune from tort liability is to meet the statute's requirements that it be a principal or stockholder of an immune employer.
The Commission found that the Yamoto and Sumitomo parent companies were "party-employers acting within the employer-shareholder role." It found that the Yamoto and Sumitomo defendants were "immune from liability as a result of their personae as principals and stockholders in accordance with Ark. Code Ann. § 11-9-105(a)." The Commission wrote:
The Full Commission finds that [the Yamoto and Sumitomo parent companies] were acting in their capacities as the claimant's employer at the time of the compensable injury. [The parent companies] are immune from liability in tort pursuant to their status as principals or stockholders, in accordance with Ark. Code Ann. § 11-9-105(a) (Repl. 2012). The respondents were not a third party in accordance with Ark. Code Ann. § 11-9-410(a) (Repl. 2012). Therefore, as it pertains to [the parent companies], jurisdiction of this case rests exclusively with the Arkansas Workers' Compensation Commission.
As we said earlier, Myers has timely appealed the Commission's decision to apply the exclusive-remedy doctrine in favor of the appellees.
II.
The Commission has original exclusive jurisdiction to decide whether a tort action is barred by the exclusive-remedy provision of Arkansas Code Annotated section 11-9-105(a). VanWagoner v. Beverly Enters. , 334 Ark. 12, 970 S.W.2d 810 (1998).
In deciding what a statute means, the interpretation of a statute by the agency charged with its execution is highly persuasive and, while not binding on this court, will not be overturned unless it is clearly wrong. Brigman v. City of W. Memphis , 2013 Ark. App. 66, at 2-3, 2013 WL 457909. But see id. at 5-7 (Harrison, J., concurring). When we construe the workers' compensation statutes, we must strictly construe them. Id. at 3. Strict construction is narrow construction and requires that nothing be taken as intended that is not clearly expressed. Id. The doctrine of strict construction requires this court to use the plain meaning of the language employed. Id.
*302 Whether an employer-employee relationship exists between the parties is a factual issue solely within the jurisdiction of the Commission. Honeysuckle v. Curtis H. Stout, Inc. , 2010 Ark. 328, at 6-7, 368 S.W.3d 64, 69. We affirm the Commission's findings if they are supported by substantial evidence. Privett v. Excel Specialty Prods. , 76 Ark. App. 527, 531, 69 S.W.3d 445, 448 (2002).
Here, the Commission found that the appellee entities were employers, for the purpose of the exclusive-remedy provision, because they were principals or stockholders of Arkansas Steel Associates, LLC. This conclusion is supported by substantial evidence in the record and is not a clearly wrong interpretation of Ark. Code Ann. § 11-9-105(a) under the circumstances. By this we mean that there was no real factual dispute over the business-entities' structure related to Arkansas Steel Associates, LLC; and once it was determined (stipulated) that the appellee entities were principals or stockholders of Arkansas Steel Associates, LLC, then as a matter of statutory construction we believe the Commission did not clearly err by concluding that the statute shielded the appellee entities.
In the tort case in the White County Circuit Court, Myers alleged workplace-safety violations against the parent Yamoto and Sumitomo parent companies. The claims she made against the Yamoto and Sumitomo parent companies are substantially the same ones she made against their subsidiary-Arkansas Steel Associates, LLC. In the circuit court, Myers also sued other American and international companies-WireCo Worldgroup, Inc.; Casar Drahtseilwerk Sasar GMBH d/b/a Casar; Yarbrough Cable Services, LLC; Jaco Construction Company; Heavy Machines, Inc.; Morgan Engineering Systems, Inc.; and John Does I thorough X-related to problems with the crane, cables, firewall, block, and ladle used at the worksite.
The Commission found that the appellees were not, in fact, third parties; but the other named defendants in the tort lawsuit were third parties within the meaning of the Workers' Compensation Act. Section 11-9-410(a) provides that an injured employee may, in addition to pursuing a claim for workers' compensation benefits, maintain action in court against a third party who may be responsible for the injury. Ark. Code Ann. § 11-9-410(a) (Repl. 2012). A third party in workers'-compensation-law terms means some party other than an employer. Id.
Here, the parties stipulated that Arkansas Steel Associates, LLC, Michael Myers's employer, was a subsidiary of the parent companies, meaning that the parent companies owned a controlling share of Arkansas Steel Associates, LLC. In their stipulation, the parties used the words "principal" and "stockholder." The words "principal" and "stockholder" appear in the exclusive-remedy provision under the Workers' Compensation Act. See Ark. Code Ann. § 11-9-105(a). The Commission concluded that the parent companies' statuses as principals and stockholders of Arkansas Steel Associates, LLC, made them employers under the statute.
The plain language of the statute supports this conclusion. First, the word "partner" is omitted at the end of subsection (a), where it states: "No role, capacity, or persona of any employer, principal, officer, director, or stockholder other than that existing in the role of employer of the employee shall be relevant for consideration." The statute counsels us to look to whether a partner is acting as an employer but not whether a principal or a stockholder is acting as an employer. Second, there is not a comma between "partner" and "acting in his or her capacity as employer,"
*303 which tends to indicate that the phrase "acting in his or her capacity as employer" modifies only "partner"-not the other nouns listed before the word "partner." In other words, "partner acting in his or her capacity as employer" is a stand-alone, independent "thing." The case law supports this admittedly grammar-dependent reading of the statute. See McCoy v. Walker , 317 Ark. 86, 876 S.W.2d 252 (1994) (stating when no contrary intention appears, referential and qualifying phrases relate or refer only to last antecedent); Bell v. Bd. of Dirs , 109 Ark. 433, 160 S.W. 390 (1913) (explaining that evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma).
Moreover, the Commission's interpretation that a statutory "employer" includes its principals and stockholders strikes us as the more practical and workable rule of law and more likely than not the one that the General Assembly intended when it enacted section 11-9-105(a). See Act of Mar. 2, 1979, No. 253, § 4, 1979 Ark. Acts 522, 523. The only overarching rule in statutory interpretation is to give effect to the General Assembly's intent. Holt v. City of Maumelle , 302 Ark. 51, 53, 786 S.W.2d 581, 583 (1990) ("The basic rule of statutory construction, to which all other interpretative guides are really subordinate, is to give effect to the intent of the legislature."). Under Myers's reasoning, the "true employer" test must be applied to any "principal, officer, director, stockholder" of any employer. We conclude that such a sweeping rule was not intended. See Ark. Code Ann. § 11-9-101(b) (stating intent of Act is "to emphasize that the workers' compensation system in this state must be returned to a state of economic viability").
In this case, Myers did not allege that the parent companies had a status so completely independent from, and unrelated to, a status as an employer that would except her complaint from workers'-compensation law. She did not, for example, plead any intentional torts or independent bad acts that would place the claims outside a normal employment context. The Commission's finding that the parent companies were employers and the other defendants were third parties is supported by substantial evidence in the record. Honeysuckle , supra.
Finally, it is vital to note that Myers is not without a remedy. Pursuant to Ark. Code Ann. § 11-9-105(a), once an employee or employee's beneficiary avails himself or herself of the rights and remedies under the Workers' Compensation Act, those rights and remedies must be exclusive of all other rights and remedies. Myers is receiving death benefits from her husband's employer. Consequently, she is not allowed to sue the parent companies in tort for alleged workplace negligence.
III.
Myers further argues that Ark. Code Ann. § 11-9-105(a) is unconstitutional as applied by the Commission because it grants tort immunity to a defendant who doesn't have an employment relationship with the injured party. The Commission found that article 5, section 32 of the Arkansas Constitution did not bar its decision because there was an employer-employee connection between Myers and the parent corporations given their statuses as principals and shareholders (owners) of Myers's employer.
Statutes are presumed constitutional, and the burden of proving otherwise is upon the challenger of the statute. ACW, Inc. v. Weiss , 329 Ark. 302, 947 S.W.2d 770 (1997). Under the Arkansas *304 Constitution, "every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character." Ark. Const. art. 2, § 13. Workers'-compensation law is an exception to this general principle. Prior to the adoption of amendment 26 in 1938-which created the Workers' Compensation Act-article 5, section 32 of the Arkansas Constitution provided that "[n]o act of the General Assembly shall limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property." Ark. Const. of 1874, art 5, § 32 (amended 1938).
Amendment 26 to the 1874 Arkansas Constitution changed that article 5 now permits the General Assembly to enact laws prescribing the amount of compensation to be paid for injuries resulting in death, or injuries involving compensation paid by employers to employees who have been injured or have died while employed:
The General Assembly shall have power to enact laws prescribing the amount of compensation to be paid by employers for injuries to or death of employees, and to whom said payment shall be made. It shall have power to provide the means, methods, and forum for adjudicating claims arising under said laws, and for securing payment of same. Provided, that otherwise no law shall be enacted limiting the amount to be recovered for injuries resulting in death or for injuries to persons or property; and in case of death from such injuries the right of action shall survive, and the General Assembly shall prescribe for whose benefit such action shall be prosecuted.
Ark. Const. art. 5, § 32, amended by Ark. Const. amend. 26.
Our supreme court has interpreted section 11-9-105(a) to mean that any claim against an employer for injury or death may only be brought under the Act, which eliminates an employer's tort liability. Elam v. Hartford Fire Ins. Co. , 344 Ark. 555, 42 S.W.3d 443 (2001). This exclusivity is based on the general purpose behind our workers'-compensation laws, which was to change the common law and shift the burden of all work-related injuries from individual employers and employees to the consuming public, with the concept of fault being virtually immaterial. Craven v. Fulton Sanitation Serv., Inc. , 361 Ark. 390, 206 S.W.3d 842 (2005). With the passage of these statutes, employers gave up the common-law defenses of contributory negligence, fellow servant, and assumption of the risk; for their part, employees gave up the chance to recover large damages awards but have more certainty in their ability to recover something. Brown v. Finney , 326 Ark. 691, 932 S.W.2d 769 (1996).
Because the exclusive-benefits provision of our compensation law favors both the employer and the employee, appellate courts have taken a narrow view of any attempt to seek damages beyond the exclusive remedy. Honeysuckle , 2010 Ark. 328, 368 S.W.3d 64. There are exceptions when the Act plainly does not provide a remedy for the claim. Hendrix v. Alcoa, Inc. , 2016 Ark. 453, at 5, 506 S.W.3d 230, 234. So a worker whose injury is not covered by workers'-compensation law has a constitutional right to file a tort claim against an employer. Automated Conveyor Sys. v. Hill , 362 Ark. 215, 208 S.W.3d 136 (2005).
Our supreme court has held Ark. Code Ann. § 11-9-105(a) unconstitutional to the extent that it grants tort immunity to a prime contractor when there is no statutory employment relationship with the injured person. Stapleton v. M.D. Limbaugh Constr. Co. , 333 Ark. 381, 392, 969 S.W.2d 648, 653 (1998). In Johnson v. Arkansas *305 Steel Erectors , this court stated that Ark. Code Ann. § 11-9-105(a), as amended by 1993 Ark. Acts 796, section 4, was unconstitutional as applied because it "grants tort immunity to a prime contractor even when there is no statutory employment relationship with the injured employee." 2009 Ark. App. 755, at 9, 350 S.W.3d 801, 806. This statement was technically more dictum than holding, because it was not necessary to go that far to decide the case. Johnson 's actual holding was that a construction worker could recover against the lessor of a crane that fell on him because the crane's lessor was a third party, and not the employee's employer.
In section II above, we held that the parent companies are statutory employers and affirmed the Commission's finding that an employer-employee relationship existed under the circumstances. It has long been the law that the General Assembly has the authority to state who an employer is. Baldwin Co. v. Maner , 224 Ark. 348, 351, 273 S.W.2d 28, 31 (1954) (legislature is not prohibited from providing by statute the ones that are to be regarded as employees or employers). Whether a party is immune under the workers' compensation exclusivity is a sensitive issue. See Hendrix , 2016 Ark. 453, at 11, 506 S.W.3d at 237. We nonetheless hold that Ark. Code Ann. § 11-9-105(a) is constitutional as applied in this case because the General Assembly may define who is an employer pursuant to the power given to it by the Arkansas Constitution.
IV.
In this case's context, an "employer" includes its principals and stockholders. Third parties who have no ownership interests in the employer company are not entitled to immunity. Ark. Code Ann. § 11-9-410 (Repl. 2012); see also Johnson , 2009 Ark. App. 755, at 3, 350 S.W.3d at 803 (lessor of crane that injured an employee was a third party not entitled to employer immunity). Only parties who are so-called statutory employers are immune in tort under the exclusive-remedy provision. And parent companies that own subsidiaries having a direct employment relationship with the claimant are statutory employers under Ark. Code Ann. § 11-9-105(a).
Section 11-9-105(a) is constitutional as applied by the Commission in this case because under the circumstances, the defendant parent companies had an employment relationship with the injured party. Myers has received her workers'-compensation benefits from Arkansas Steel Associates, LLC, and she cannot recover further from its immune principals and stockholders.
We affirm the Commission's decision on all points.
Affirmed.
Abramson, Klappenbach, Murphy, and Brown, JJ., agree.
Whiteaker, J., dissents.