BELL *v.* BOARD OF DIRECTORS OF JEFFERSON COUNTY BRIDGE
DISTRICT.

## Opinion delivered October 13, 1913.

1. STATUTES—RULE OF CONSTRUCTION.—In the construction of statutes, the general rule is that a limiting clause is to be restrained to the last antecedent, unless the subject-matter requires a different construction. (Page 436.)

2. BRIDGE IMPROVEMENT DISTRICT—PETITION—SIGNATURES.—Section 5 of Act 214, Private Acts of 1911, p. 608, provides that if the board of directors find that the petition "is signed by a majority, either in number, or in acreage or in value, of the holders of real property within the district, as shown by the last county assessment," they shall proceed to carry out the purposes of the act. *Held,* the words, "as shown by the last county assessment," relate to the preceding word, "value," only, and do not qualify any of the other preceding words in the section. (Page 437.)

3. BRIDGE DISTRICT—BOARD OF DIRECTORS—CONDUCT—EVIDENCE.—Evidence held to show that the action of the directors of the Jefferson County Bridge District in declaring that the district had been legally formed, that they had exercised their honest judgment, and made no attempt to disregard the facts or make a false finding. (Page 437.)

4. BRIDGE DISTRICT—FORMATION—FINDING OF BOARD OF DIRECTORS.—The validity of the organization of the Jefferson County Bridge District under Act 214, Private Acts of 1911, depends alone upon the fact, whether the board of directors shall find that it is legally organized. (Page 439.)

Appeal from Jefferson Chancery Court; *John M. Elliott,* Chancellor; affirmed.

*A. R. Cooper,* for appellant.

1. The directors, in passing on the question whether or not the petitions were signed by a majority, either in number, or acreage or value, of the holders of real property, did not confine themselves to the record of the "last county assessment," as prescribed by section 5 of Special Act No. 214, Acts 1911, p. 608. Words in common use are to be construed in their natural, plain and ordinary signification, where the language is unambiguous. 36 Cyc. 1114; 97 Ark. 38, 43; 93 *Id.* 45; 102 *Id.* 205; 97 *Id.* 287; 90 *Id.* 520; 81 *Id.* 208; 99 *Id.* 516.

2. The finding is not conclusive when false, fraudulent or irregular. 106 Ark. 151. Fraud includes all acts, omissions, or concealment, which involve a breach of duty, trust or confidence, or by which an undue advantage is taken. Eaton on Equity, § 120; Pom. Eq. Jur., § 873; Story Eq. Jur., § 187; Smith on Eq., § 153; 99 N. W. 191; 92 Ark. 509.

*Coleman & Gantt* and *Danaher & Danaher,* for appellee.

1. All qualifying clauses in an act of the Legislature, unless the manifest intention appears to the contrary, are construed to relate to the word or phrase immediately preceding. The words, "as shown by the last county assessment," relate only to *"value."* 36 Cyc. 1123; 53 So. 454; 121 Pac. 821.

2. No fraud was shown. 153 S. W. 261.

*Asa C. Gracie* and *Carmichael, Brooks, Powers & Rector, amici curiae.*

1. The board was required to be governed solely by the last county assessment. Section 5, Acts 1911, p. 608. The finding of the board was false, and hence a fraud resulted. The board was not limited in its inquiry to the *"value"* alone. Page & Jones on Taxation by Assessment, §§ 228, 229; 21 Ark. 40; 23 *Id.* 146. The county assessment was the sole guide. 49 Ark. 376; 99 *Id.* 508.

2. Sufficient evidence of fraud was shown. Pom. Eq., §§ 872-921; Page & Jones on Taxation by Assessment, § 298; 70 Ark. 175.

3. The Legislature fixed the guide and the board must follow it. 78 Ark. 463; 99 *Id.* 508.

HART, J. The General Assembly of 1911 passed an act for the creation of an improvement district for the purpose of constructing a bridge over the Arkansas River, at or near the city of Pine Bluff, and the constitutionality of the act was sustained in the case of *Board of Directors of Jefferson County Bridge District* v. *Collier,* 104 Ark. 425. Subsequently, certain owners of land within the proposed district presented to the circuit

court of Jefferson County a petition for a writ of *certiorari* to bring up and quash the proceedings of the Board of Directors of the Jefferson County Bridge District finding that the petition for improvement had been signed by a majority, as prescribed by the terms of the statute authorizing the improvement. The circuit court sustained a demurrer to the petition, which, on appeal, was affirmed by the Supreme Court. *Collier* v. *Board of Directors of Jefferson County Bridge District,* 106 Ark. 151, 153 S. W. 259. The court held, however, that a property owner should be allowed to call in question, on the ground of fraud, a finding of the Board of Directors, and the court said:

"We are of the opinion, however, that the petition does not state facts sufficient to make out such a charge of fraud against the board of directors as will warrant setting aside the findings. Fraud which will vitiate the proceedings of the board does not mean errors of the board either of law or fact. In order to constitute fraud, there must have been an intent not to exercise an honest judgment and make a true finding, but to disregard the facts and make a false finding. This is not alleged in the petition. Taking the allegations as a whole, they amount only to a charge of error on the part of the board in refusing to hear and consider protests and evidence affecting the question at issue, and that the petition was not, in fact, signed by a majority of the property owners. The statute does not provide any method of procedure for the board, and the board had the right to inquire into the fact in its own way."

Thereupon, certain land owners within the proposed district instituted a suit in the chancery court of Jefferson County, seeking to enjoin the board of directors from continuing the improvement on the ground that the finding of the board was false and fraudulent within the meaning of this decision. The present suit was instituted against the board of directors by Roane C. Bell, and, after hearing the evidence introduced by both parties, the chancellor dismissed the complaint for want of

equity, and the case is here on appeal. The other cases were heard on the same testimony, and the plaintiffs in those cases have joined with the plaintiff in the request suit in briefing the case for hearing before us.

Section 5 of the act of 1911, Act 214, p. 608, Private Acts, under which the district was organized, provides, among other things, that if, at the hearing the board of directors shall find that the petition for the improvement was not signed by a majority, either in number or in acreage or in value, of the holders of real property within the district, as shown by the last county assessment, they shall so declare, and such findings shall terminate all proceedings under this act. It further provides that if said board of directors shall find that said petition is signed by a majority, either in number or in acreage or in value, of the holders of real property within the district, as shown by the last county assessment, they shall so declare and shall proceed to carry out the purposes of the act.

The board, after having examined the petitions filed with it, and after considering all the evidence introduced before it, found in favor of the organization of the proposed district, and the object and purpose of the present suit is to set aside the finding of the board on account of fraud.

The principal contention of counsel for plaintiff is that under section 5 of the act, set out above, the last county assessment on file with the county clerk of Jefferson County before the organization, is made the sole standard and guide whereby the board shall make an ascertainment and declaration of the question of whether or not there is a majority in numbers of the holders of real property within the district who signed the petition. On the contrary, it is contended by counsel for defendants that the words "as shown by the last county assessment" relate only to the value of the land within the proposed district, and are not to be taken as applying to the owners of the land or to the acreage.

In the construction of statutes the general rule is

that a limiting clause is to be restrained to the last antecedent, unless the subject-matter requires a different construction. *Cushing* v. *Worrick*, 9 Gray (Mass.) 382; *State* v. *Scaffer*, 95 Minn. 311; Lewis' Sutherland Statutory Construction (2 ed.), vol. 2, § 408; Black on Interpretation of Laws, p. 150. Under this rule of construction, we think that the words "as shown by the last county assessment" relate to the preceding word "value," only, and do not qualify any of the other preceding words in the section. We think this construction is manifest from the general scope and purpose of the statute, and that such construction carries out the intention of the Legislature. Our statutes authorizing the creation of improvement districts in municipal corporations provide that the council, in organizing the district, shall be governed by the valuation placed upon the property, as shown by the last county assessment on file in the county clerk's office. It is well known that persons differ widely as to the value of real property, and, by making the valuation placed by the county assessor on the real property a guide, a more uniform valuation of the property is ascertained than could be declared by any other means. It is a matter of common knowledge that land is frequently assessed and the taxes paid in the name of another person than the owner; and it is not to be presumed that the Legislature, in the act in question, intended that the board should be governed solely, as to the owners of property within the proposed district, by the county assessor's books, for it is evident that this would not be a sure and safe method of ascertaining who owned land within the district. See *Maney* v. *Burke*, 92 Ark. 84. Moreover, section 7113, Kirby's Digest, provides that no sale of land or lot for delinquent taxes shall be considered invalid on account of its having been charged on the tax book in any other name than that of the rightful owner.

The evidence upon the part of the defendants shows that they acted honestly and in good faith in making their finding that the district had been organized ac-

cording to the terms of the act. They examined both the tax books and the county assessment list, and heard the testimony introduced by the land owners who objected to the formation of the district. Under the decision of the court upon the former appeal, in the case of *Collier* v. *Board of Directors*, reported in 153 S. W. 259, 106 Ark. 151, the finding of the board that the district was organized in conformity with the provisions of the act is conclusive.

Moreover, if it should be said that we are mistaken in holding that the words, "as shown by the last county assessment of the land within the district," do not qualify the word "value," alone, the evidence does not show that there was an intent on the part of the members of the board not to exercise an honest judgment, and make a true finding. The evidence taken in the case is very voluminous. No useful purpose could be served by setting it out in detail. We deem it sufficient to say that we have carefully considered it, and are of the opinion that it shows that the members of the board gave a full and fair hearing to the land owners who opposed the formation of the district, and in declaring that the district had been legally formed under the provisions of the act, and that their conduct, as shown by the testimony, leads us to the conclusion that they exercised their honest judgment to make a true finding, and did not attempt to disregard the facts and make a false finding. We held, when the matter was before us before, that fraud which would vitiate the proceedings of the board did not mean errors of the board, either of law or of fact. The most that could be said in the present case is that the testimony showed that the board made an erroneous finding; but it does not show that it made a false finding. The fact that the board went into executive session to consider the testimony presented to it does not in any manner indicate fraud on its part.

It is again strongly insisted by counsel for plaintiff that, under the provisions of section 5 of the act the finding of the board is not conclusive. In support of their

position, counsel refer to the first part of the section which provides that the board of directors shall give public notice of the passage of the act and of their organization and the purposes of the act, and that the public improvement contemplated is conditioned upon its approval by a majority, either in numbers or in acreage or in value, of the holders of real property within said district. A subsequent clause of the same section provides that if the board of directors shall find that the petition is signed by a majority, either in number or in acreage or in value, of the holders of real property within the district, etc., they shall so declare, and shall proceed to carry out the purposes of the act. Thus it will be seen that the act does not provide that the validity of the organization of the proposed district shall depend upon the fact, whether a majority, either in numbers or in acreage or in value, of the holders of real property within the district, shall have signed the petition, but the validity of the organization depends alone upon the fact, whether the board of directors shall so find. It is true the first part of the act requires the board to advertise that the public improvement contemplated by the act is conditioned upon its approval by the majority; but, as we have already seen, power is conferred conclusively upon the board to ascertain and determine whether or not a majority has signed the petition. No doubt, the Legislature, in providing that the board of directors should give public notice that the public improvement is conditioned on its approval by a majority, contemplated that the finding of the board that a majority had signed the petition should be a true finding, and not a false one, and we so held when the matter was before us in our prior decision relating to the question.

Counsel have given no good reason why our ruling on this question was not sound, and we adhere to it on this appeal. Reference is made to our former decisions for the reason for adopting it. It follows that the judgment must be affirmed.