The Honorable Mike Huckabee, Governor State Capitol Building, Suite 250 Little Rock, Arkansas 72201
Dear Governor Huckabee:
I am writing in response to your request for an opinion on three questions concerning the employment by a state agency of state legislators during their terms of office. Specifically, you reference Act 34 of 1999, which is now codified at A.C.A. § 21-1-401 to -408 (Supp. 2001). As an initial matter, you indicate that Section 2 of Act 34 is not codified exactly as it was passed by the General Assembly. Section 2(a)(1) of Act 34 as originally passed provides as follows:
 SECTION 2. (a)(1) Subject to any restrictions or conditions prescribed by the Arkansas Constitution, no person elected to a constitutional office may, after being elected to the constitutional office, and during the term for which elected, enter into employment with any state agency or employment in any noncertified position with any public school district of this state, any vocational education school funded by the state, any education service cooperative, or the Cooperative Education Services Coordinating Council unless the constitutional officer resigns prior to entering into the employment.
A "constitutional officer" includes a member of the Arkansas House of Representatives or the Arkansas Senate. A.C.A. § 21-1-401(1). You note that the codified version of this Act adds a comma between the words "Council" and "unless" in the last phrase.[1] You note that if read as originally enacted (without the last-mentioned comma), Section 2(a)(1) of Act 34 could be read to authorize employment with the Cooperative Education Services Coordinating Council upon the legislator's resignation from the General Assembly, but would prohibit acceptance of any of the other listed employments, resignation notwithstanding. You thus assert that without the insertion of this comma, the qualifying phrase "unless the constitutional officer resigns prior to entering into the employment" would modify only the immediately preceding state entity (the Cooperative Education Services Coordinating Council). Your questions, therefore, which are set out below, seek clarification as to the legality, under Act 34, of a state legislator resigning his seat in the General Assembly to accept any state employment. You also acknowledge, in this regard, that Arkansas Constitution, art. 5, § 10 prohibits a state legislator from being appointed or elected to a "civil office" during his or her term of office. It has been previously opined that this constitutional prohibition applies during the entire term of service to which the legislator was elected, notwithstanding a mid-term resignation from the General Assembly. Op. Att'y Gen. 99-396. You have asked that I assume,for purposes of your opinion request, however, that the employment inquestion is not a "civil office" for purposes of art. 5, § 10.
Your first two questions with regard to these facts are as follows:
 1. Whether a legislator can resign during their [sic] term to accept employment with any state agency?
 2. Whether a legislator is prohibited during his term from accepting employment with any state agency, resignation or not?
With regard to your third question, you state initially that Section 2(a)(2) of Act 34 allows an existing state employee to be elected to the General Assembly. You state that your third question concerns the salary of a legislator who is a state employee prior to being elected to the General Assembly. Your third question is as follows:
 3. Whether state law would allow a legislator to receive the state employee salary and also receive the legislative pay?
You note that Act 34 does not cover this question. That act regulates the salary received by the legislator from the separate state employment, but does not mention the legislative salary. You note that other state laws governing salaries and compensation of state employees would control the receipt of legislative salary in such an instance. You specifically mention A.C.A. § 19-4-1604 in this regard and inquire as to whether is would prohibit a legislator who is also a state employee from receiving both salaries.
RESPONSE
I should note as an initial matter that the Arkansas Ethics Commission has jurisdiction to investigate violations of Act 34 of 1999 and is specifically given all the powers it possesses under A.C.A. § 7-6-217 and § 7-6-218 in such investigation. One such power is the authority to issue advisory opinions. See A.C.A. § 7-6-217(g)(2) (Supp. 2001). I will therefore opine generally on the statutory questions you present, but must defer to the Arkansas Ethics Commission's jurisdiction as to particular factual scenarios.
In my opinion, in response to your first question, it is impossible to make a sweeping pronouncement that would be correct as to every possible state employment. Assuming the position in question is not a "civil office," however, as you have asked me to do, it is my opinion as a general matter that the answer to your first question is "yes." Act 34 of 1999 allows a legislator to resign his seat in the General Assembly to accept state employment. This conclusion only obtains, however, assuming there is no provision of the Arkansas Constitution or more particular provision of the Arkansas Code that would prohibit the employment. Each particular position must be evaluated in light of its own facts to conclusively determine the issue as regards that position. In response to your second question, in my opinion the answer is generally "no," so long as the position is not a "civil office" and there is no other constitutional or statutory prohibition with regard to that particular position. The answer to your third question is not entirely clear, but in my opinion, assuming the state employee is not prohibited by the Arkansas Constitution, specific state law or the federal "Hatch Act" from being elected as a member of the General Assembly, there is no prohibition against the individual receiving his separate state salary and his legislative salary. In my opinion A.C.A. § 19-4-1604(a) does not apply in that instance.
Question 1 — Whether a legislator can resign during their [sic] term toaccept employment with any state agency?
This question appears to arise from the punctuation issue discussed earlier with regard to A.C.A. § 21-1-402(a)(2). In my opinion the legislative intention of Section 2(a)(1) of Act 34 is the same as that codified at A.C.A. § 21-1-402(a)(2), without regard to the placement of the comma. In my opinion Act 34, Section 2(a)(1) was intended to prohibit a state legislator from accepting state employment during his term unless he resigned his legislative seat. In my opinion the absence of a comma between the words "Council" and "unless" in the original act does not mean that the qualifying phrase "unless the constitutional officer resigns prior to entering into the employment" only modifies employment with the "Cooperative Education Services Coordinating Council." In my opinion rather, Act 34, as originally enacted, authorizes a state legislator's separate state employment with any of the listed entities upon his resignation from the General Assembly assuming there is no constitutional or other legal prohibition.
With regard to the placement of a comma after a disjunctive list, but before a qualifying phrase, the following has been stated:
 As a general rule, under the doctrine known as the "last antecedent," relative and qualifying words, phrases and clauses refer solely to the last antecedent. 82 C.J.S. Statutes § 334 (1953); 2A Sutherland Stat. Const. § 47.33 (4th ed. 1984); Bell v. Board of Directors, 109 Ark. 433, 160 S.W. 390 (1913). Thus, a proviso is usually construed to apply to the immediately preceding provision or clause. 2A Sutherland, supra. Under another rule of statutory construction, the presence of a comma separating a qualifying clause from the clause immediately preceding it is an indication that the qualifying phrase was intended to modify all of the preceding clauses and not only the last antecedent one. Id.
* * *
 It has also been stated, however, that the courts will disregard punctuation or repunctuate, if necessary, to give effect to what otherwise appears to be the proper and true meaning of the statute. 2A Sutherland Stat. Const. § 47.15; Duty v. City of Rogers Benton County, 225 Ark. 309, 500 S.W.2d 347 (1973).
Opinion 91-099 at 2, 3.
It has been stated that a misplaced comma cannot be used to distort the meaning of a statute. Sutherland Stat. Const. § 47.15. In addition, the rule of the "last antecedent" is not inflexible and uniformly binding.Id. at § 47.33. "Where the sense of the entire act requires that a qualifying word or phrase apply to several preceding . . . sections, the word or phrase will not be restricted to its immediate antecedent." Id.
In my opinion the proper construction of Section 2(a)(1) of Act 34 is that the qualifying phrase "unless the constitutional officer resigns prior to entering into the employment" modifies all the preceding listed employments and the Arkansas Code Revision Commission has codified the Act properly on this point.[2] In reading the act as a whole, no basis exists for distinguishing a legislative resignation to accept employment with the Cooperative Education Services Coordinating Council from a resignation to accept any of the other listed positions. The public controversy that gave rise to the passage of Act 34 included at least three instances of sitting state legislators accepting state employments without resigning their legislative seats. See e.g. Biedenharn v. Hogue,338 Ark. 660, 1 S.W.3d 424 (1999); State ex rel. Bryant v. Thicksten, (CV 9712408, Pulaski County Circuit Court, Second Division 1997); and Stateex rel. Bryant v. Purdom, (CV 9711788, Pulaski County Circuit Court, Sixth Division 1997). Although one of these cases involved the acceptance of employment with the "Cooperative Education Coordinating Council" (seeState ex rel. Bryant v. Thicksten, supra), there does not appear to be any factual basis upon which the General Assembly would have treated employment with that agency differently from the other listed employments. It follows, therefore, that the absence of a comma between the words "Council" and "unless" in the original act is substantively unimportant. In my opinion, therefore, Act 34 prohibits a state legislator from accepting any of the listed state employments during his term of office unless he resigns his legislative seat.
As indicated earlier, however, any relevant constitutional prohibitions must be addressed, as well as any more particular state statutes governing a particular employment. The primary constitutional impediment to a member of the General Assembly accepting a state position,resignation notwithstanding, is art. 5, § 10 of the Arkansas Constitution, which you have asked me to assume is inapplicable. In addition, another commonly applicable prohibition, the "separation of powers" doctrine embodied at Arkansas Constitution, art. 4, §§ 1 and 2, would be inapplicable in the case of a resignation, after which no dual
powers would be exercised. Any prohibition arising from the common law "incompatibility" of offices doctrine would also be negated by a resignation from the legislature. I cannot rule out, however, some more specific statutory prohibition applicable to a particular state employment. By way of illustration, let me refer to the facts of State exrel. Bryant v. Purdom, supra. In that case the Attorney General filed suit against a state legislator who had accepted a state employment with the Alcoholic Beverage Control Enforcement Division. The Attorney General alleged both that the position was a "civil office" in violation of Arkansas Constitution art. 5, § 10 and that Representative Purdom's acceptance of it violated A.C.A. § 3-2-207(d), which prohibits an appointee to the Alcoholic Beverage Control Enforcement Division from being an elected or appointed officer or employee of the state. In that case, a statute particular to the state agency in question addressed the dual employment. The question of whether resignation from the General Assembly would have obviated the specific statutory prohibition was not presented or addressed.[3] It is because of specific statutory prohibitions such as A.C.A. § 3-2-207(d) that I cannot make sweeping pronouncements as to the legal ability of a sitting state legislator to resign his legislative seat and accept state employment under Act 34. There may be particular statutes applicable to given employments that would prohibit acceptance of the state employment even in the case of a resignation from the General Assembly. Each case must be reviewed on its own facts in order to reach a conclusive determination. Again, the Arkansas Ethics Commission is invested with jurisdiction in this regard.
Question 2 — Whether a legislator is prohibited during his term fromaccepting employment with any state agency, resignation or not?
It is my opinion, consistent with the conclusions and qualifications stated above, that the answer to this question is generally "no." Again, however, any relevant constitutional or statutory restrictions must be evaluated in light of the facts of each case. Act 34 of 1999, as stated above, permits a General Assembly member to resign his legislative seat to accept state employment, assuming there is no constitutional impediment, or more specific statutory prohibition.
Question 3 — Whether state law would allow a legislator to receive thestate employee salary and also receive the legislative pay?
You state that this question has reference to an existing state employee who is thereafter elected to the General Assembly.[4] You note that Act 34 of 1999 does not prohibit this situation. As an initial matter, I must point out that there may be several other legal obstacles to the dual office-holding you describe, before the issue of the dual salaries becomes relevant. Arkansas Constitution, art. 5, § 7 restricts certain enumerated officeholders and any person holding a "lucrative office under this State or the United States" from eligibility to a seat in either house of the General Assembly. In addition, the federal "Hatch Act" (5 U.S.C.A. § 1502(a)(3)) can restrict the ability of certain state employees with federally funded positions to pursue partisan candidacies for elective office. The "separation of powers" doctrine, cited earlier, may also have to be considered, as well as any other potentially applicable constitutional or statutory provision. Assuming no such obstacle, your question is whether the state employee may receive not only his state employee salary, which appears to be permitted but regulated by Act 34 of 1999,[5] but also the legislative salary set in Arkansas Constitution, Amendment 70, §§ 1(b) and 3. Act 34 does not mention the receipt of salary for service in the General Assembly, although it might be argued that this silence is a tacit authorization of the receipt of such salary.
Assuming the legality of the dual service, I can find no legal obstacle to receipt of the legislative pay in addition to the state employee salary.
As an initial matter, Amendment 70, which addresses the salaries of members of the General Assembly, states that "no member of the General Assembly shall receive any other income for service in the General Assembly, whether in the form of salaries or expenses. . . ." This provision appears limited to the compensation received "for service in the General Assembly" and does not address salary received for separate state employment.
In addition, Arkansas Constitution, art. 16, § 4 provides that: "The General Assembly shall fix the salaries and fees of all officers in the State, and no greater salary or fee than that fixed by law shall be paid to any officer, employee or other person, or at any rate other than par value. . . ." This provision does not address dual employment and appears addressed only at the compensation for one state position.
You mention two possible statutory obstacles. First, you cite Act 1461 of 2001, § 3, specifically as codified at A.C.A. § 21-5-209(b). This statute is a part of the "Uniform Classification and Compensation Act," and it provides in pertinent part that:
 (b) No employee shall be paid at a rate of pay higher than the appropriate rate in the grade assigned to his or her class, and no employee shall be paid more than the maximum for his or her grade. . . .
Again, this subsection does not speak to dual employment, but rather appears to address only the compensation received for the classified position to which the subchapter is applicable.
The second statute you cite is A.C.A. § 19-4-1604 (Supp. 2001). It does specifically address dual service and provides in pertinent part as follows:
 (a) Except as provided in subsection (b), no person drawing a salary or other compensation from one (1) state agency shall be paid salary or compensation, other than actual expenses, from any other agency except upon written certification to and approval by the Chief Fiscal Officer of the State and by the head of each agency, stating that:
 (1) The work performed for the other agency does not interfere with the proper and required performance of the person's duties; and
 (2) The combined salary payments from the agencies do not exceed the larger maximum annual salary of the line-item position authorized for either agency from which the employee is being paid.
The issue of whether this provision applies to a state legislator who accepts other state employment during his term was raised but not squarely decided in Biedenharn v. Hogue, supra. In that case, the currently serving, but soon to be term-limited Speaker of the House of Representatives accepted a position with a state university during his continuance in office. Taxpayers sued to recover the salary he received from the state employment, citing several legal provisions, including the prohibition contained in A.C.A. § 19-4-1604. The court held that because there was no genuinely disputed issue of fact on whether the acceptance of the position was fraudulent or in bad faith, summary judgment was appropriate and the former Speaker was permitted to retain the quantummeruit value of his services to the university. Justice Brown, in a dissenting opinion in which Justices Imber and Smith joined, believed that there were disputed issues of fact necessitating a trial of the matter. Justice Brown also concluded his opinion by stating that: "I do agree with the majority that there is no basis for the plaintiffs' claim that Hogue was appointed to `a civil office' or that he was working fortwo state agencies." Id. at 670 (emphasis added). This reference is clearly to A.C.A. § 19-4-1604, cited by the plaintiffs in Biedenharn.
Evidently, therefore, the Arkansas Supreme Court does not regard A.C.A. § 19-4-1604 as applicable to the separate state employment of a General Assembly member. Whether this conclusion is based upon the fact that service in the General Assembly is not with a "state agency" or on some other basis is not clear.[6]
In any event, I cannot conclude, in light of the pertinent language of the Biedenharn decision, that A.C.A. § 19-4-1604 stands as an obstacle to an existing state employee who is later elected to the General Assembly receiving the legislative salary. This is particularly true in light of the additional fact that Act 34 of 1999 took up the entire subject matter of state employment of General Assembly members and does not contain any such prohibition.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] Actually, the codified version makes several other punctuation and word changes, including the insertion of semicolons between each of the listed positions. See A.C.A. § 21-1-402(a)(1)(A) through (E) (Supp. 2001). The codified version of this subsection reads as follows:
 (a)(1) Subject to any restrictions or conditions prescribed by the Arkansas Constitution, no person elected to a constitutional office may, after being elected to the constitutional office and during the term for which elected, enter into employment:
(A) With any state agency;
 (B) In any noncertified position with any public school district of this state;
(C) With any vocational education school funded by the state;
(D) With any education service cooperative; or
 (E) With the Cooperative Education Services Coordinating Council, unless the constitutional officer resigns prior to entering into employment.
[2] In fact, Act 751 of 1999, effective March 22, 1999, formerly required the Code Revision Commission to obtain the prior approval of the Director of the Bureau of Legislative Research in order to correct punctuation in a legislative act. See former A.C.A. § 1-2-303, amended by Act 327 of 2001.
[3] If indeed the position was a "civil office" for purposes of Arkansas Constitution, art. 5, § 10, however, the employment would still be prohibited, resignation or no.
[4] The converse, of course, is illegal under Act 34. A sitting state legislator may not accept state employment under that act unless he resigns his legislative seat. There would therefore be no necessity to discuss the legality of dual salaries in that instance.
[5] The pertinent language of Act 34 on this point is codified at A.C.A. § 21-1-402(a)(2), which provides that: "Subject to any restrictions or conditions prescribed by the Arkansas Constitution, any constitutional officer who was employed by a state agency prior to being elected a constitutional officer may continue such employment, but the employment shall not thereafter be reclassified unless it is the result of a general reclassification affecting all positions of the class and grade equally, nor shall the constitutional officer receive any pay increase for that employment other than the cost-of-living increases authorized by the General Assembly without the prior approval of the Joint Budget Committee during legislative sessions, the Legislative Council between legislative sessions, and the Governor."
[6] A later case mentions, but apparently declines to interpret A.C.A. § 19-4-1604 as prohibiting the receipt of compensation by full or part-time public defenders from the Arkansas Supreme Court for appellate work. See Boston v. State, 341 Ark. 370, 16 S.W.3d 239 (2000), fn 1. Seealso Rushing v. State, 340 Ark. 84, 8 S.W.3d 489 (2000).